**Justice A. BENNETT, Plaintiff-Appellant,**

v.

**MID–SOUTH TERMINALS CORPORATION, Defendant-Appellee.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Oct. 4, 1983.

Permission to Appeal Denied by Supreme Court Dec. 19, 1983.

Lewis K. Garrison, Memphis, for plaintiff-appellant.

Ralph Holt, Memphis, for defendant-appellee.

TOMLIN, Judge.

The plaintiff appeals to this Court from the judgment of the Circuit Court of Shelby County, granting defendant's motion for summary judgment. Plaintiff had sued for damages as a result of injuries received while working on the premises of defendant. Judge James Tharpe held that defendant was immunized from suit in tort by the Tennessee Worker's Compensation Act. Two issues are presented for our consideration: (1) whether the defendant was a co-employer of plaintiff at the time of his alleged injury; and (2) whether plaintiff is limited to a cause of action under the Worker's Compensation Act and thus precluded from bringing an action in negligence against defendant. We find no error in the granting of summary judgment by the trial judge.

In ruling on motions for summary judgment, both the trial court and this Court must consider the matter in the same manner as a motion for a directed verdict made at the close of plaintiff's proof; i.e., we must view all affidavits in the light most favorable to the opponent of the motion, and draw all legitimate conclusions of fact therefrom in that favor. It is only when there is no disputed issue of material fact that a summary judgment should be

granted by the trial court and sustained by this Court. *Stone v. Hinds,* 541 S.W.2d 598 (Tenn.App.1976) *cert. denied* (1976); *Phillips v. Pittsburgh Consolidated Coal Co.,* 541 S.W.2d 411 (Tenn.1976).

Following are the facts material to this litigation: On the day of the alleged injury the plaintiff was an employee of Labor Force, Inc., a supplier of temporary manpower to industries and other companies in the Mid-South area. On February 24, 1981, defendant requested that Labor Force supply it with some temporary day labor to assist in the loading of a barge at its terminal. Labor Force supplied plaintiff as one of the workers for the defendant, and it also transported plaintiff to defendant's premises, where he was deposited and turned over to defendant to begin work. Labor Force maintained no supervisor at the scene of plaintiff's employment.

Plaintiff was loading a barge for defendant at the time of the alleged injury. Although it is disputed as to whether defendant had a supervisor actually in the barge at the time of the accident, it is not disputed that defendant at least exercised some supervision over the plaintiff.

Pursuant to a pre-existing agreement between Labor Force and defendant, for each temporary laborer furnished defendant by Labor Force, it was paid at the rate of $5.20 an hour. It is undisputed that under this agreement Labor Force was required to carry worker's compensation insurance on all employees sent by it to defendant and others. Labor Force compensated plaintiff for the hours that he worked for defendant, paying him the minimum wage. The differential between the hourly rate paid to Labor Force and the hourly rate paid by Labor Force to plaintiff provided funds for the payment of the worker's compensation insurance premium, withholding taxes on the plaintiff, Labor Force's out-of-pocket expenses relative to transporting plaintiff to and from defendant's place of business, and Labor Force's profit.

Without question, plaintiff was an employee of Labor Force, and Labor Force had the right to discipline and terminate plaintiff at any time. We agree with the trial judge when he stated: "Whether Mid-South was indeed plaintiff's co-employer on the date of the accident is the primary issue on this motion by Mid-South for summary judgment."

The law applicable to the fact situation before us is clearly set forth in the case of *Winchester v. Seay,* 219 Tenn. 321, 409 S.W.2d 378 (1966) in which the court dealt with the "borrowed servant" or "loaned employee" doctrine, and therein adopted a three-pronged test, as found in § 48 of *Larson on Compensation,* which is as follows:

"48.00 When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if

"(a) The employee has made a contract of hire, express or implied, with the special employer;

"(b) The work being done is essentially that of the special employer; and

"(c) The special employer has the right to control the details of the work.

"When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation.

409 S.W.2d at 381.

In determining whether plaintiff had made a contract of hire, either express or implied, with the defendant, the language used by the Supreme Court of Minnesota in *Daneck v. Meldrum Mfg. & Engineering Co., Inc.,* 312 Minn. 404, 252 N.W.2d 255 (1977) in a case similar to the one *sub judice* becomes relevant:

[W]e think it is quite clear that plaintiff consented to work for defendant and that such was pursuant to an implied contract between them. In this case plaintiff knew when he was hired by Manpower that all of his work would actually be performed for various customers of his general employer. *The very fact that he entered into an employment arrangement of that nature would constitute a general*

*consent to work for special employers such as defendant."* [emphasis supplied]. *Id.* at 260.

The trial court correctly found that the plaintiff readily consented to work for whomever Labor Force sent him and specifically had consented to work for defendant on the day in question.

The facts also clearly establish that at the time of the alleged injury the work being done by the plaintiff was performed for the defendant. Furthermore, we feel it beyond question that defendant had the right to control the details of that work so as to fulfill the last requirement of the *Winchester* test. As to this last requirement, the *Winchester* court states that its outcome "depends upon the answer to the basic, fundamental and bedrock question of whether as to the special employer the relationship of employer-employee existed at the time of the injury." 409 S.W.2d at 381. In the instant case the record shows that such a relationship did exist.

Not only was it the right of the defendant to control what the plaintiff did and how he did it, but the defendant also had the right to reject any offered employee of Labor Force that it [defendant] deemed unfit for the work to be done. Furthermore, plaintiff in his deposition stated that his boss on the day of the alleged injury was the foreman for defendant. It is also uncontradicted that Labor Force's worker's compensation carrier at the time of trial had already paid plaintiff the sum of $4,338 in benefits for this injury, and that a portion of defendant's labor cost paid to Labor Force was intended to cover worker's compensation premiums.

Under these facts and under the law as established in *Winchester* and more recently affirmed in *Carpenter v. Hooker Chemical & Plastics Corp.,* 553 S.W.2d 356 (Tenn. App.1977), the defendant was a co-employer of the plaintiff at the time of his alleged injury. That being so, plaintiff's right to recover is limited to the rights afforded him under the Worker's Compensation Act. These rights he has already exercised by virtue of his claim against Labor Force, and he has been compensated by virtue of that claim up to the time of trial.

The contention of plaintiff that the determination of the employer-employee is a fact question for the jury and thus should not be disposed of by summary judgment has been addressed by the Middle Section of this Court in *Carpenter, supra.* At page 359, the Court stated:

> Plaintiffs resist adoption of the "loaned servant theory," insisting that the status of loaned servant is a question of fact for the jury. This is so only when the evidence is disputed or reasonable minds might draw different inferences of fact from the undisputed evidence. Such is not true in the present case. All of the evidence shows that the deceased employee was a loaned servant under the criteria set out in *Winchester v. Seay, supra.*

553 S.W.2d at 359.

For the reasons stated above, the judgment of the trial judge is affirmed. Costs in this cause are taxed to the plaintiff, for which execution may issue, if necessary.

NEARN, P.J., and CRAWFORD, J., concur.