**FRED'S FINANCE COMPANY,**
Plaintiff–Appellee,

v.

**FRED'S OF DYERSBURG, INC., Harvey Pike, Nellie Pike, Victor Pike, Jefferey Pike, and Especially For You, Inc., Defendants–Appellants.**

Court of Appeals of Tennessee,
Western Section, at Jackson.

July 29, 1987.

Application for Permission to Appeal
Denied by Supreme Court
Nov. 2, 1987.

Henry C. Shelton, III, Memphis, for plaintiff-appellee.

Gerald W. Ketchum, J. Steven Stafford, Dyersburg, for defendants-appellants.

CRAWFORD, Judge.

This case involves creditor rights under a perfected security agreement. Defendants have appealed from the trial court's order granting plaintiff summary judgments against them. Plaintiff has also presented issues for review which we will consider as necessary.

Defendant, Fred's of Dyersburg, Inc., borrowed $800,000 from plaintiff, Fred's Finance Company, evidenced by a promissory note in that amount dated April 13, 1983, and payable on demand. As security for the loan, Fred's of Dyersburg executed, among other things, a security agreement and collateral pledge agreement granting Fred's Finance Company a security interest in the following described property.

> All inventory now or hereafter acquired and all store fixtures, furniture and equipment plus any additions, substitutions and replacements located in the Fred's store located on Highway 78, Dyersburg, Tennessee.

The agreement also provided:

> 8. The above described property and all property held by Fred's Finance Company as collateral under this agreement may, from time to time, with the consent of said Fred's Finance Company be withdrawn or released or exchanged for other property which may likewise be successfully withdrawn, realeased [sic] or exchanged without prejudice to the rights of Fred's Finance Company against any endorser or guarantor of any of the obligations of the undersigned held by Fred's Finance Company. All

> collateral hereafter pledged either as addition to or in substitution for any of the property herein described shall be held by Fred's Finance Company subject to all the terms of this agreement.

A financing statement containing the same description of property was executed and filed which specifically provided that the proceeds of collateral were also covered.

Demand for payment of the note was made on March 14, 1984 and when payment was not forthcoming, Fred's Finance Company filed its complaint on March 28, 1984, in the Circuit Court of Tennessee for the Thirtieth Judicial Circuit at Memphis. The complaint sought recovery of the personal property listed as security in the Security Agreement, and a money judgment for any deficiency resulting after disposal of the collateral. The complaint specifically alleged that the contract documents were executed in Shelby County, Tennessee, although the property sought was located in Dyer County, Tennessee. Fred's of Dyersburg filed a motion to quash the possessory hearing, and by order entered April 4, 1984, the court denied the motion and ordered that a writ of possession issue to the Sheriff of Dyer County "directing said sheriff to take command of all inventory and/or proceeds thereof, all store fixtures, furniture, and equipment located in the Fred's store at 805 Pennell Lane, Dyersburg, Tennessee ..." The Writ of Possession was served April 5, 1984. Fred's of Dyersburg then filed its answer April 30, 1984, and joined issue on the material allegations, denied that it was in default, and averred that Fred's Finance Company wrongfully and prematurely accelerated the indebtedness. The answer further averred that the security for the loan was limited solely to that described in the loan documents and not as alleged in the complaint.

Through discovery proceedings, it was determined that Fred's of Dyersburg, Inc., on March 29, 1984, shortly after it was served with the original complaint, held a

special meeting of the Board of Directors which authorized the following disbursements of corporate funds: bonus to Jeffrey Pike of $2,500; bonus to Victor Pike of $3,000; bonus to Nellie Pike of $7,000; salary for Nellie Pike from April 15, 1983, through December 31, 1983, of $34,000; salary for Nellie Pike for 1984 year to date $10,000; and a loan to Especially for You of $40,000.

Pursuant to order of court granting Fred's Finance Company leave to amend and supplement its complaint, an amended and supplemental complaint for writ of possession and money judgment was filed on January 7, 1985, which in essence restated the original complaint and added Harvey Pike, Nellie Pike, Victor Pike, Jefferey Pike, and Especially for You, Inc., as supplemental defendants. The complaint essentially alleged that the funds distributed to the supplemental defendants by the Board on March 29, 1984 were the proceeds of collateral described in the Security Agreement, that plaintiff had a security interest in these proceeds, and that defendants wrongfully converted them to their own use. The complaint also alleged that the transfer of the funds to these defendants constituted fraudulent conveyances. The amended and supplemental complaint specifically alleged that the additional defendants were residents and citizens of Dyer County, Tennessee, and that the acts complained of against them occurred in Dyer County. In response to the complaint the supplemental defendants filed a motion to dismiss for lack of venue which was overruled by the court. The supplemental defendants answered the complaint and joined issue on the material allegations, denied that they converted any of the plaintiff's property and denied that there were any fraudulent conveyances. Subsequently, on plaintiff's motion it was granted summary judgment against Fred's of Dyersburg for $432,347, against Nellie Pike for $41,604.35, against Victor Pike for $4,552.61, against Jefferey Pike for $2,812.34, against Especially for You for $40,000. All defendants except Especially for You, Inc., have appealed.

We have rephrased the issues that defendants present for review as follows:

1. Whether the trial court erred in holding that Shelby County is proper venue for the actions against the supplemental defendants.

2. Whether there was a proper joinder of the supplemental defendants in the original suit filed against Fred's of Dyersburg, Inc.

3. Whether the trial court erred in holding that Fred's Finance Company obtained a security interest in the proceeds of the sale of collateral.

4. Whether the trial court erred in granting summary judgment for plaintiff against Fred's of Dyersburg, Inc., Nellie Pike, Jeffrey Pike, and Victor Pike.

Victor Pike raises the additional issue of whether the summary judgment against him is erroneous on its face because it awards plaintiff more than it sought in the complaint.

Because the disposition of Issue 3 is essential in order to consider Issues 1 and 2, we will first consider Issue 3 which is as follows:

3. Whether the trial court erred in holding that Fred's Finance Company obtained a security interest in the proceeds of the sale of collateral.

▇ Fred's of Dyersburg contends that prior to January 1, 1986, in order to have a security interest in the proceeds of collateral, there must be a specific provision to this effect in the security agreement. This contention is premised on T.C.A. § 47-9-203(1)(b) (1979), which states:

47-9-203. *Enforceability of security interest—Proceeds, formal requisites.—* (1) Subject to the provisions of § 47-4-208 on the security interest of a collecting bank and § 47-9-113 on a security interest arising under the chapter on sales, a security interest is not enforceable against the debtor or third parties unless:

\* \* \* \* \* \*

(b) the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops or oil, gas or minerals to be extracted or timber to be cut, a description of the land concerned. *In describing collateral, the word "proceeds" is sufficient without further description to cover proceeds of any character.* (Emphasis added).

Defendants assert that the last sentence of (1)(b) required that proceeds be specifically described. In the case before us, the security agreement did not specifically state that proceeds of the collateral were covered, but the filed financing statement did make this provision. Fred's Finance Company relies upon T.C.A. § 47-9-306 (1979), which states in pertinent part:

47-9-306. *"Proceeds"—Secured party's rights on disposition of collateral.* —(1) "Proceeds" includes whatever is received when collateral or proceeds is sold, exchanged, collected or otherwise disposed of. The term also includes the account arising when the right to payment is earned under a contract right. Money, checks and the like are "cash proceeds." All other proceeds are "noncash proceeds."

(2) Except where this chapter otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement or otherwise, and *also continues in any identifiable proceeds including collections received by the debtor.*

(3) The security interest in proceeds is a continuously perfected security interest if the interest in the original collateral was perfected but it ceases to be a perfected security interest and becomes unperfected ten (10) days after receipt of the proceeds by the debtor unless:

(a) a filed financing statement covering the original collateral also covers proceeds; or

(b) the security interest in the proceeds is perfected before the expiration of the ten-day period. (emphasis added)

\*   \*   \*   \*   \*   \*

The framers of the UCC recognized that conflicting positions could be stated in dealing with §§ 9-203 and 9-306 and provided a 1972 amendment to remedy the situation.[1] The advisory committee's official explanation of the 1972 amendment states:

Heretofore an apparent inconsistency in ambiguity has existed between the last sentence of Section 9-203(1)(b) of the 1962 Code, which indicated that a claim to proceeds had to be an express term of the security agreement, and Section 9-306(2), which indicated that a right to proceeds was automatic without reference to a term of a security agreement. This ambiguity has been clarified in favor of an automatic right to proceeds, on the theory that this is the intent of the parties, unless otherwise agreed. Further, there has been eliminated the requirement of claiming proceeds in a financing statement, which had resulted in a checking of a box on each financing statement in order to claim proceeds. Instead, the filed claim to the original collateral is treated as constituting automatically a filing as to proceeds.

9 R. Anderson, *Anderson on the Uniform Commercial Code,* § 9-306.2 (2d ed. 1985).

Professor Gilmore describes the last sentence of 9-203(1)(b) as: "an unnecessary, and therefore, potentially mischievous sentence." Professor Gilmore then explains:

It is entirely clear that under § 9-306 the security interest shifts automatically from original collateral to proceeds. It is not necessary that either security agreement or financing statement contain a proceeds clause, and the inclusion of such a clause in a financing statement has to do only with continuing the inter-

---

**1.** The 1972 amendments to the UCC have been adopted in Tennessee effective January 1, 1986, but are not applicable to this case.

est in a perfected status. The trouble with the § 9–203 sentence quoted above is that, being embedded in a section dealing with formal requisites, it sounds like an additional formal requisite; that is, there would be no shift to proceeds, perfected or unperfected, unless the security agreement contains a proceeds clause. That was certainly not intended. The § 9–203 sentence was intended to make clear that exact or detailed descriptions of particular types of proceeds were not required. It ought to have been part of § 9–110 on description, where it would have done no harm. It is to be hoped that its inclusion in § 9–203 will not lead to holdings that a new, and entirely unnecessary, formal requisite has been created.

I.G. Gilmore, Security Interest in Personal Property, § 11.4 (1965)

We agree with Professor Gilmore's analysis and construction. *See also In Re Dyke*, 20 UCC Rep. 524 (E.D.Tenn.1976).

We also must bear in mind that the security interest described in the agreement with which we are primarily interested is the inventory. It certainly was contemplated that the inventory would be constantly sold and replaced leaving in the place of that sold the proceeds realized from the sale. It must have been within the contemplation of the parties that the collateral would be sold free and clear of the security interest. 9 R. Anderson, *Anderson on the Uniform Commercial Code*, § 9–306:23 (2d ed. 1985), states:

The right to retain a security interest in the proceeds whatever they may be is particularly important in view of the fact that ordinarily when goods are inventory there will be an implied authorization to the debtor to sell free of the security interest of the creditor....

The parties hereto have not cited nor have we been able to find any Tennessee authority dealing with this question. Although the parties have cited a few cases from other jurisdictions citing their respective views, there is very little appellate authority in any jurisdiction. In any event, we cannot escape the fact that it was within the contemplation of all the parties that Fred's Finance Company be secured and that the security interest in the inventory ceased upon sale to a bona fide purchaser. It seems logical that 47–9–306 was intended to provide automatic security protection to the creditor under these circumstances. Therefore, we hold that by virtue of T.C.A. § 47–9–306(2) (1979), the proceeds of the collateral were included as security in the Fred's Finance Company loan.

Issues 1 and 2 will be considered together:

1. Whether the trial court erred in holding that Shelby County is proper venue for the actions against the supplemental defendants.

2. Whether there was a proper joinder of the supplemental defendants in the original suit filed against Fred's of Dyersburg, Inc.

Plaintiff filed the original action in Shelby County against Fred's of Dyersburg, Inc., seeking recovery of personal property and a money judgment. Jurisdiction and venue of possessory actions are controlled by T.C.A. § 29–30–102 (1980), which we quote:

29–30–102. *Jurisdiction and venue.* (a) The action may be instituted in the court of general sessions or in the circuit court or chancery court.

(b) The action may be instituted in any county where any part of the personal property is located, in the county where the contract was executed, in the county where any defendant resides or in the county where the address of any defendant was stated to be in any writing on which the plaintiff's claim to possession is founded.

It is uncontroverted that the contract was executed in Shelby County and the original suit was properly filed in Shelby County. Defendants point out that the venue of the action against Fred's of Dyersburg was acquired by virtue of a

special statute dealing with possessory actions premised on the execution of the contract in Shelby County. They assert that they were not parties to any contract in Shelby County, nor did any cause of action against them arise in Shelby County and that therefore venue was proper only in their place of residence which is Dyer County. In essence this case as to the supplemental defendants presents causes of action which arose in Dyer County against residents of Dyer County. Under normal circumstances, the venue of any such action would properly be in Dyer County. T.C.A. § 20–4–101 (1980).

In the case before us, suit was properly brought against Fred's of Dyersburg, Inc., in Shelby County, seeking recovery of personal property described in a security agreement and also seeking a money judgment. Subsequently, plaintiff alleged that property covered in the security agreement, i.e., proceeds of the collateral, was converted by the supplemental defendants to their own use, thus alleging a separate cause of action against these defendants in tort for conversion. Also in the supplemental complaint, plaintiff alleges a cause of action against the original defendant and the supplemental defendants for fraudulent conveyance of property. Under the rules of the common law we are constrained to believe that the causes of action against the original defendant and the supplemental defendants could not be properly joined. However, we are not dealing with the rigid rules of the common law, we are now dealing with Tennessee Rule of Civil Procedure 20.01 which provides:

> 20.01. *Permissive Joinder.*—All persons may join in one (1) action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action. All persons may be joined in one action as defendants if there is asserted against

them jointly, severally, or in the alternative, any right to relief of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.

In *Rooney v. Callins,* 62 Tenn.App. 105, 459 S.W.2d 430 (1970), a case decided prior to the adoption of the Tennessee Rules of Civil Procedure, the court held that the privilege of issuing counter-part summons to a county other than the county of suit must be based upon a proper joinder of defendants. Although the joinder of parties defendant is much more liberal under the Rules, we find nothing in the Rules to change this holding. We adopt the statement of the Supreme Court of Missouri in *State ex rel. Allen v. Barker,* 581 S.W.2d 818, 824 (1979), that "the issues of proper venue are contingent upon whether there is proper joinder of parties."

In *Barker,* the court was considering the issue of venue in connection with the joinder of defendants involved in separate causes of action. The Missouri rule concerning permissive joinder was patterned after Rule 20, Federal Rules of Civil Procedure, and is virtually identical to Rule 20.01, Tennessee Rules of Civil Procedure. The court said:

> Our joinder rule, 52.05 was adopted from the federal rule governing joinder, Fed. R.Civ.P. 20. Under these rules the federal courts, and Missouri, have broadened the range of claims which may be permissibly joined.
>
> \* \* \* \* \* \*
>
> While joinder was originally limited by the common law and the Field Code, modern law has clearly extended permis-

sive joinder to cases in which the injury is indivisible and to successive tort-feasors liable for at least a part of plaintiff's injury. However, no definitive test to determine if defendants may be joined has been devised. One court has stated: "[T]he approach must be the general one of whether there are enough ultimate factual concurrences that it would be fair to the parties to require them to defend jointly against them...." *Eastern Fireproofing Co., Inc. v. United States Gypsum Co.,* 160 F.Supp. 580, 581 (D.Mass. 1958). The Eighth Circuit has adopted the "logical relationship" test, drawn from cases interpreting Fed.R.Civ.P. 13(a)'s requirement that compulsory counterclaims be made where claims arise out of the same series of transactions or occurrences. Adopting this test to Fed.R.Civ.P. 20 permits "reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary." *Mosley v. General Motors Corp.,* 497 F.2d 1330, 1333 (8th Cir.1974). *Accord, United States v. Mississippi,* 380 U.S. 128, 142–43, 85 S.Ct. 808 [815–16] 13 L.Ed.2d 717 (1965); *Wright & Miller,* 7 Federal Practice & Procedure, § 1653 at 268–74 (1972); *see Great Lakes Rubber Corp. v. Herbert Cooper Co., Inc.,* 286 F.2d 631 (3rd Cir. 1961) (explanation of logical relationship test as relating to Fed.R.Civ.P. 13(a)). Such is in keeping with the Supreme Court's admonition in *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 724, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966): "Under the [federal] Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."

581 S.W.2d at 826–27.

■ In the case before us, the alleged conversion and fraudulent conveyances involving the defendants could only arise by virtue of the fact that the proceeds of collateral constitute a part of the security for the debt. There certainly is a logical relationship between the claim for possession of the property and for damages for the conversion thereof. Plaintiff has asserted claims against the defendants severally which arise out of the same transaction or occurrence involving the original defendant. Obviously, there are questions of law or fact that are common to all the defendants involved in the action. We hold that the supplemental defendants were properly joined, and having been properly joined to the action which itself was properly filed in Shelby County, the venue of the action against the supplemental defendants is properly in Shelby County.

We will now consider Issue 4 which is as follows:

4. Whether the trial court erred in granting summary judgment for plaintiff against Fred's of Dyersburg, Inc., Nellie Pike, Jeffrey Pike, and Victor Pike.

The order of the trial court granting summary judgment against the individual defendants was premised in part on the following statement of the court which we quote from the order.

2. By demanding payment of the $800,-000 note on March 5, 1984, Plaintiff revoked its authorization, theretofore granted, to Fred's of Dyersburg, Inc., to dispose of the proceeds of the collateral in the ordinary course of business.

We have been cited to no authority supporting the proposition that demand for payment does or even could revoke authorization to dispose of proceeds of collateral in the ordinary course of business. The practical effect of such a proposition is to close the business. There could be instances where there is a controversy concerning the debt and to hold that a demand for payment revokes an authorization to continue the ordinary business appears to this court to be a most liberal interpretation of the UCC and one with which we cannot agree. Furthermore, to so hold would be contradictory to the purpose of a possessory hearing pursuant to T.C.A. § 29–30–104(b) (1979), which states:

the purpose of the possessory hearing is to protect the defendant's use and possession of the property from arbitrary or mistaken deprivation.

It is inescapable that plaintiff was not authorized to take possession of the collateral, including proceeds, until April 4, 1984.

The affidavits and depositions filed in opposition to the motion for summary judgment against the individual defendants state that the payments were made for salaries and bonuses and were made in the ordinary course of business. It is conceded that authorization had been granted by the plaintiff to dispose of proceeds of the collateral in the ordinary course of business, and it appears that there is a dispute as to whether the payments were made in the ordinary course of business and whether an authorization to make the payments in the ordinary course of business was sufficiently revoked to prevent any further payments.

Summary judgment is to be rendered by a trial court only when it is shown that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Tenn.R. Civ.P. 56.03 (1984). In ruling on a motion for summary judgment, the trial court and the Court of Appeals must consider the matter in the same manner as a motion for a directed verdict made at the close of the plaintiff's proof, i.e., all the evidence must be viewed in the light most favorable to the opponent of the motion and all legitimate conclusions of fact must be drawn in favor of the opponent. It is only when there is no disputed issue of material fact that a summary judgment should be granted by the trial court and sustained by the Court of Appeals. *Graves v. Anchor Wire Corp. of Tennessee*, 692 S.W.2d 420 (Tenn.App. 1985); *Bennett v. Mid–South Terminals Corp.*, 660 S.W.2d 799 (Tenn.App.1983).

Summary judgment is not proper where, although the basic facts are not in dispute, parties in good faith may disagree about the inferences to be drawn from those facts. *Blue Diamond Coal v. Holland– America Insurance Co.*, 671 S.W.2d 829 (Tenn.1984); *Prescott v. Adams*, 627 S.W. 2d 134 (Tenn.App.1981).

In *Evco Corp. v. Ross*, 528 S.W.2d 20 (Tenn.1975), Justice Harbison commented on the use of summary judgment:

The summary judgment procedure was designed to provide a quick, inexpensive means of concluding cases, in whole or in part, upon issues as to which there is no dispute regarding the material facts. Where there does exist a dispute as to facts which are deemed material by the trial court, however, or where there is uncertainty as to whether there may be such a dispute, the duty of the trial court is clear. He is to overrule any motion for summary judgment in such cases, ...

*Id.* at 24–25.

Considering all of the circumstances evidenced by this record, we feel that summary judgment against the individual defendants was improper. As to Fred's of Dyersburg, Inc., there was no dispute that Fred's of Dyersburg signed a demand note. A demand was made and the balance due was undisputed. Summary judgment was properly granted against this defendant. As previously noted, Especially For You, Inc., did not appeal.

Plaintiff has presented as an issue for review whether the trial court erred in stating in the order granting summary judgment:

9. Defendants Harvey Pike and Nellie Pike are not liable for the total amount of proceeds expended by defendant Fred's of Dyersburg, Inc., from and after notice of demand by plaintiff.

The matter was before the court on motion for summary judgment, and we have previously noted that there are disputed issues of material fact precluding summary judgment for the plaintiff. The record reflects the same situation as to plaintiff's claim against these defendants. The supplemental complaint charges these defendants with conversion of assets and fraudu-

lent conveyance. A complaint should not be dismissed for failure to state a claim upon which relief may be granted, unless it appears that no set of facts can be proved in the support of plaintiff's claims that would entitle it to relief. *Bellar v. Baptist Hospital, Inc.*, 559 S.W.2d 788 (Tenn.1978). The trial court erred in dismissing plaintiff's claim against Harvey Pike and Nellie Pike.

In summary, the order of the trial court denying defendants' motions to dismiss for lack of venue is affirmed. The order of the trial court granting summary judgment to plaintiff against Fred's of Dyersburg, Inc., and Especially for You, Inc., is affirmed, and the order in all other respects is reversed and the case remanded for trial. Costs are assessed one-half against plaintiff and one-half against defendants.

TOMLIN, P.J. (W.S.), and HIGHERS, J., concur.