**Paula J. PHAN, Plaintiff–Appellant,**

v.

**Robert E. SANDERS and Terry K. Sanders, Individually and d/b/a Acme Termite and Pest Control, Defendants–Appellees,**

**Timothy L. Mulroy, Individually, Defendant.**

Court of Appeals of Tennessee, Western Section, at Jackson.

March 19, 1991.

Application for Permission to Appeal Denied by Supreme Court Sept. 3, 1991.

Stephen R. Leffler, Memphis, for plaintiff-appellant.

William M. Jeter, and Lucinda S. Murray, Memphis, for defendants-appellees.

CRAWFORD, Judge.

Plaintiff, Paula J. Phan, appeals from the order of the trial court granting summary judgment to defendants, Robert E. Sanders and Terry K. Sanders, individually and d/b/a Acme Termite and Pest Control (hereinafter Acme), which was made final pursuant to Rule 54.02, Tenn.R.Civ.P.

In May, 1986, plaintiff purchased a home at 3550 Douglas in Memphis from defendant, Timothy L. Mulroy. In August, 1989, plaintiff filed her complaint against Mulroy and Acme seeking rescission of the real estate sales transaction and in the alternative, damages.

As to Acme, the complaint alleges that in May, 1986, plaintiff for a valuable consideration hired Acme to inspect the property for termites, termite damage and conditions conducive to termite infestation and that Acme had a contractual duty to conduct a reasonably accurate inspection of the property and make a report to the plaintiff. She avers that Acme breached its contractual duty to conduct a reasonably accurate inspection of the property, and failed to notify plaintiff of the following items of damage beneath the house, that "the clapboards on the exterior of the house were touching the ground, that there was evidence of termite infestation, that there was evidence of termite damage and that there was structural insecurity from termite infestation/damage." Plaintiff alleges that she relied upon Acme's report in making her determination to purchase the property from Mulroy and alleges that Acme's actions caused her to incur various items of damages.

Acme's answer admits that for a valuable consideration Acme was hired to inspect the property for termites, termite damage and conditions conducive to termite infestation, but denies that Acme breached its contractual duty.

The only issue for review is whether the trial court erred in granting summary judgment to these appellees.

Summary judgment is to be rendered by a trial court only when it is shown that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R.Civ.P. 56.03 (1984). In ruling on a motion for summary judgment, the trial court and the Court of Appeals must consider the matter in the same manner as a motion for a directed verdict made at the close of the plaintiff's proof, i.e., all the evidence must be viewed in the light most favorable to the opponent of the motion and all legitimate conclusions of fact must be drawn in favor of the opponent. It is only when there is no disputed issue of material fact that a summary judgment should be granted by the trial court and sustained by the Court of Appeals. *Graves v. Anchor Wire Corp. of Tennessee*, 692 S.W.2d 420 (Tenn.App. 1985); *Bennett v. Mid–South Terminals Corp.*, 660 S.W.2d 799 (Tenn.App.1983).

The movant of the summary judgment motion carries the burden of proving that no genuine issues of material fact exist and that the uncontradicted evidence entitles the movant to a judgment as a matter of law. *Gann v. Key*, 758 S.W.2d 538 (Tenn. App.1988). The opponent of the motion need only to demonstrate that there are disputed or contradicted material factual issues. *Belsky v. Payne*, 560 S.W.2d 78 (Tenn.App.1977). The disputed facts, however, "must bear directly and materially upon the legal elements of the claim or defense being tested by the summary judgment motion." *Macon County Livestock Market, Inc. v. Kentucky State Bank, Inc.*, 724 S.W.2d 343, 348 (Tenn.App.1986). In responding to a motion for summary judgment, the opponent is not required to

prove the merits of the case, but must, however, submit evidence by affidavit or otherwise showing that a material factual issue exists. Rule 56.05, Tenn.R.Civ.P.; *Moman v. Walden,* 719 S.W.2d 531 (Tenn. App.1986).

The record establishes, through Terry Sanders' response to requests for admissions, that on May 19, 1986, Acme made an inspection of the property for the purpose of detecting "the presence of termites through active visible infestation ... for the purpose of detecting visible termite damage to the property ... for the purpose of detecting visible conditions conducive to termite infestation of the property." The response to requests for admissions also establishes that Acme reported to plaintiff that there was "no evidence of visible termite infestation of the house ... no evidence of visible termite damage to the house ... no evidence of visible structural insecurity from or caused by termite infestation/damage to the house." The report was made on Veterans Administration Form No. 2900–0372. A copy of the report is attached as an addendum to this Opinion.

In the spring of 1989, plaintiff had her home inspected by a licensed contractor, P.T. Sykes, to determine the cause of several problems she was having with the house, and Sykes' affidavit was filed in opposition to Acme's motion for summary judgment. No objection was made to the affidavit, nor to Sykes' qualifications as an expert witness to give opinion evidence. The affidavit, after listing various conditions noted during the inspection, states:

\* \* \* \* \* \*

In my opinion, on or about March 1, 1986, there was evidence of termite and decay damage to the property at 3550 Douglass, to wit:

(a) structural insecurity from termites and decay;

(b) floor unlevel and sagging due to termite damage, decay.

\* \* \* \* \* \*

Plaintiff asserts that Acme failed to use reasonable care in making the inspection and in reporting the findings to the plaintiff. She argues that in using the V.A. form for the report Acme had a duty to properly prepare the form in order to make an accurate report to the plaintiff. She points out that Instruction 4 on the form requires the inspector to list obstructions or areas which inhibit the inspection. Not only did Acme not furnish this information, but Acme also affirmatively stated that there were no areas of the property which were obstructed or inaccessible. Plaintiff and her husband, Kenny Strong, have testified by deposition that there were areas under the house which were inaccessible to a person of normal size and this is corroborated by Sykes' affidavit. Plaintiff also asserts that Instruction 6 of the form requires that "visible evidence of conditions conducive to infestation from subterranean termites shall be reported on the reverse of the form (earth—wood contact, faulty grades, insufficient ventilation, etc.)." No such information was contained on the reverse side of the form and plaintiff argues that this was a representation made by Acme that no such conditions existed which were conducive to termite infestation. She notes that Sykes' affidavit indicates that there were numerous conditions which were conducive to termite infestation which were in existence at the time Acme inspected the property in 1986, including the earth—wood contact. Plaintiff further points out that in item 8 on the form Acme reported that there was no visible evidence of infestation from wood destroying insects, and also failed to note any visible damages as called for in 8D. She argues that Sykes' affidavit opining that termite damage found on his inspection was in existence in 1986 at the time of Acme's inspection presents a disputed issue of material fact.

Acme argues that Acme's duty was limited to the detection of visible termite infestation and that no one has testified to seeing visible active termite infestation. This argument by Acme completely disregards Acme's admission that in addition to checking for visible active termite infestation, they were also obligated to inspect for visible termite damage and visible conditions conducive to termite infestation.

Acme also asserts that there is a lack of proof of causal connection between Acme's representation of no visible evidence of termite infestation and the damage to plaintiff's property. Here again, Acme is disregarding its contractual obligation to inspect and report concerning visible damage and visible conditions conducive to termite infestation.

It requires no citation of authority for the proposition that in order to recover for breach of contract a plaintiff must prove the contract and a breach thereof. In the case at bar, the record establishes that there was a contract between plaintiff and Acme requiring Acme to inspect the premises for the purpose of detecting the presence of termites through active visible infestation, for the purpose of detecting visible termite damage to the property, and for the purpose of detecting visible conditions conducive to termite infestation of the property.[1] Acme reported to plaintiff that they had found no such visible evidence and Acme asserts that the contract was fully performed. Although Sykes' affidavit confirms the absence of active termite infestation, it does provide evidence that there presently is visible damage caused by termites and that this damage was in existence in 1986, at the time of Acme's inspection. The chancellor apparently overlooked Acme's contractual obligation to inspect for visible termite damage. From our review of the record we find that there is clearly a dispute of material facts concerning Acme's performance of its contractual obligations and summary judgment was erroneously granted.

Accordingly, the order of the trial court granting summary judgment is reversed and this case is remanded to the trial court for such other proceedings as may be necessary. Costs of the appeal are assessed against the appellees.

HIGHERS and FARMER, JJ., concur.

---

1. Among other things, Phan's complaint alleges that "plaintiff hired defendant, Acme Termite and Pest Control (hereinafter "Acme"), to inspect the property for termites, **termite damage,** *and conditions conducive to termite infesta*-tion...." Acme's answer admits this allegation of the complaint. (Emphasis added).

## ADDENDUM

| | | |
|---|---|---|
| VETERANS ADMINISTRATION U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT WOOD DESTROYING INSECT INFORMATION EXISTING CONSTRUCTION | 1A. VA CASE NUMBER 1B. HUD/FHA CASE NUMBER | 2. DATE 5-19-86 |

PRIVACY ACT INFORMATION - The information requested on this form will be used in evaluating the property for a VA or HUD insured loan. Although you are not required by law to provide this information, failure to provide it can result in rejection of the property as security for your loan. The information collected will not be disclosed outside VA or HUD except as permitted by law. VA and HUD are authorized to request this information by statute (38 U.S.C. 1810(h)(4) and 12 U.S.C. 1701 et seq.)

**READ THESE INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS FORM**

1. The VA case number or HUD/FHA case number shall be inserted in Item 1 by the lender or the pest control company.
2. When treatment is indicated in Item 8C, the areas treated will be named, the data on application method and chemicals used shall be entered in Item 10. Proper control measures may include removal of warranty. Warranty information should also be entered below. Proper control measures are those which follow good acceptable industry practices.
3. If visual evidence is found, the insects causing such evidence will be listed in Item 8A and damage resulting from such infestation will be noted in Item 8D.
4. Areas that were inaccessible or obstructed (Item 7) may include, but are not limited to, wall coverings, fixed ceilings, floor coverings, furniture or stored articles. The Pest Control Operator (PCO) should list, in Item 7, those obstructions or areas which inhibit the inspection.
5. Item 8A may be checked when the PCO is not authorized to perform control measures by the owner/seller or control measures cannot be performed due to conditions beyond control, e.g. obstruction, weather, etc.
6. Visible, evidence of conditions conducive to infestation from subterranean termites shall be reported on reverse of the form (earth-wood contact, faulty grades, insufficient ventilation, etc.).

**FINDINGS**

| 3A. NAME OF INSPECTION COMPANY Terry Pest Control | 5A. NAME OF PROPERTY OWNER/SELLER |
|---|---|
| 3B. ADDRESS OF INSPECTION COMPANY (Include ZIP Code) 3290 Getwell #103 38118 | 5B. ADDRESS OF PROPERTY 3550 Douglas 38111 |
| 3C. TELEPHONE NUMBER (Include Area Code) 901-362-9563 | 4. PEST CONTROL OPERATOR LICENSE NUMBER 165 | 5C. STRUCTURE(S) INSPECTED House & Back Build |

**6. WERE ANY AREAS OF THE PROPERTY OBSTRUCTED OR INACCESSIBLE?** ☐ Yes ☑ No
(If "Yes" complete Item 7)

**7. OBSTRUCTIONS OR INACCESSIBLE AREAS** (specify) (Read Item 11B before completing.)

**8. BASED ON CAREFUL VISUAL INSPECTION OF THE READILY ACCESSIBLE AREAS OF THE PROPERTY** (See Item 11A before completing).

☐ A. Visible evidence of wood destroying insects was observed. No control measures were performed. Insects observed:

☑ B. No visible evidence of infestation from wood destroying insects was observed.

☐ C. Visible evidence of infestation was noted; proper control measures were performed.

☐ D. Visible damage due to _____ has been observed in the following areas:

☐ E. Visible evidence of previously treated infestation, which is now inactive, was observed. (Explain in Item 10)

**9. DAMAGE OBSERVED ABOVE, IF ANY** (Check One)

☐ A. Will be/has been corrected by this company.
☐ B. Will be corrected by another company (see attached contract).
☐ C. Will not be corrected by this company. Recommend that damage be evaluated by qualified building expert.

**10. ADDITIONAL COMMENTS** (If necessary, continue on reverse)

**11. STATEMENT OF PEST CONTROL OPERATOR**

A. The inspection covered the readily accessible areas of the property, including attics and crawl spaces which permit entry. Special attention was given to those accessible areas which experience has shown to be particularly susceptible to attack by wood destroying insects. Probing and/or sounding of those areas and other visible accessible wood members showing evidence of infestation was performed.

B. The inspection did not include areas which were obstructed or inaccessible at the time of inspection. (See instruction number 4 above.)

C. This is not a structural damage report. Neither is this a warranty as to absence of wood destroying insects.

D. Neither I nor the company for which I am acting have had, presently have, or contemplate having any interest in the property. I do further state that neither I nor the company for which I am acting is associated in any way with any party to this transaction.

| 12A. SIGNATURE OF AUTHORIZED COMPANY REPRESENTATIVE Terry Sanders | 12B. TITLE Manager | 12C. DATE 5-19-86 |
|---|---|---|

**STATEMENT OF PURCHASER**

I have received the original or a legible copy of this form.

| 14. SIGNATURE OF PURCHASER Paula J. Phan | 15. DATE 5-27-86 |
|---|---|

Previous Editions are Obsolete.

VA Form 26-885
HUD-92053 (4-8'
HUD HB 4190

## ORDER ON PETITION TO REHEAR

Appellees have filed a Petition to Rehear based on the grounds that this Court "misapprehended a material fact and proposition of law" in its Opinion.

Appellees assert that appellant's contract for the purchase of the property does not have a contingency dealing with termite inspection and that "whether or not the property had termites is totally immaterial." We agree with appellees' assertion. However, that is not the point involved in the appeal.

This case was before the Court to review the granting of a summary judgment. The contract for the purchase of the property states, "Sale subject to under structure inspection by Buyer." This Court noted in its Opinion that appellees completely disregarded their own admission that in addition to checking for visible active termite infestation they were also obligated to the appellant to inspect for visible termite damage.

What is proved and what is not proved at the trial of this case is of no concern to this Court at this time. However, we are dealing with a summary judgment motion in which we must determine whether there is any dispute as to any material determinative fact. We found such a dispute at the time the original Opinion was written and we are still of the Opinion that such a dispute exists.

Accordingly, the Petition to Rehear is denied.