Hazel **MINTON**, Plaintiff/Appellee,

v.

**TENNESSEE FARMERS MUTUAL INSURANCE COMPANY,**
Defendant/Appellant.

Court of Appeals of Tennessee,
Western Section at Jackson.

March 10, 1992.

Application for Permission to Appeal
Denied by Supreme Court
April 27, 1992.

W. Lee Lackey, Savannah, for plaintiff/appellee.

James A. Hopper, Savannah, for defendant/appellant.

FARMER, Judge.

Hazel Minton sued Tennessee Farmers Mutual Insurance Company (TFMIC) to recover for the value of a ring which was insured under a homeowners policy. The ring was mailed to a jeweler in Alabama for repair and was lost in the mail. The insurer took the position that coverage was excluded because of the neglect of the insured, and both parties filed motions for summary judgment.

The trial judge granted partial summary judgment in favor of the insured, holding that there was coverage, and allowed plaintiff to recover in the amount of $6,759.00. Following a hearing, the court also awarded the plaintiff an additional twenty-five percent (25%) for the insurer's refusal to pay in good faith pursuant to T.C.A. § 56–7–105(a), and the insurer appeals.

With respect to the coverage question, it is undisputed that the ring was insured for $6,759.00. Having lost a stone from the ring, Ms. Minton reported the loss to the insurer and discussed the matter with its adjuster, Mr. DeLoach. It is the position of TFMIC that, because Ms. Minton mailed the ring certified mail and uninsured to the jeweler in Mobile, Alabama, from which it had been purchased, contrary to the instructions of DeLoach, coverage is excluded because of the following language of the policy:

Exclusions ...

Neglect of an insured person to use all reasonable means to protect the covered property at and after the time of loss or when property is threatened by a peril we insure against.

TFMIC relies on the following portions of the testimony of Mr. DeLoach taken from answers to interrogatories:

I met with the Plaintiff at the Jim Kerr Agency in Savannah after she had reported the loss of the small [sic] in her ring. The plaintiff came in and I had already received a claim form. We discussed the loss and she advised me that it was the smallest stone in the ring. I told her at this time that this was a common type claim and that she should have the ring repaired locally. At this point, she objected to having the ring repaired locally and insisted that the ring be repaired at the jeweler in Mobile, Alabama, where she purchased the same. When she objected, I told her that she could take it to Jackson, Florence, or any other town to which she could conveniently drive to take the ring to have it repaired and to be safe. Again, the Plaintiff was dead set on having the ring repaired in Mobile, Alabama. I then

asked her how she intended to get the ring to the jeweler in Mobile, Alabama. She then told me that she intended to mail the same. At this point, I voiced my objection to such procedure in that I felt it was unnecessary, and certainly increased the risk of loss of the entire ring. Again, she stated that nobody would touch her ring except the jeweler in Mobile, Alabama. I stated to her that I nor the company would have any part of mailing the ring to Mobile, Alabama. At one point, she asked me if I would pay for the insurance to mail it. My response was "no", because I felt that it was unnecessary to mail the ring and would greatly increase the possibility of loss of the ring. I told her that if I was putting a $7,000 ring in the mail, I would certainly pay for the postal insurance to cover any loss of the ring. It is the company's position that had she drove to Jackson to have the ring repaired and lost the same, we would owe for the claim, in that she was following our instructions as to how to avoid an increased risk of loss of the valuable ring. I advised her that we did not have any control over what she did with the ring, but I certainly strongly advised her that the repairs should be done locally as I instructed her, and that it was too much of a risk to mail the ring.

Although the policy itself does not appear in the record, it appears undisputed that there was no prohibition in the policy against mailing the insured item, and the defense is based solely upon the exclusion set forth above. TFMIC argues that, because the agent instructed Mrs. Minton not to mail the ring, the exclusion should apply. It further contends that it was neglect on her part not to insure the ring. She counters that she did not feel insurance was necessary because the item was already insured and that she was aware of no prohibition against mailing the item by certified mail.

■ Summary judgment is to be rendered by a trial court only when it is shown that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." T.R.C.P. 56.03. In ruling on a motion for summary judgment, the trial court and the Court of Appeals must consider the matter in the same manner as a motion for a directed verdict made at the close of the plaintiff's proof, i.e. all the evidence must be viewed in the light most favorable to the opponent of the motion and all legitimate conclusions of fact must be drawn in favor of the opponent. It is only when there is no disputed issue of material fact that a summary judgment should be granted by the trial court and sustained by the Court of Appeals. *Graves v. Anchor Wire Corp. of Tennessee,* 692 S.W.2d 420 (Tenn.App. 1985); *Bennett v. Mid–South Terminals Corp.,* 660 S.W.2d 799 (Tenn.App.1983). Although there are minor discrepancies concerning the conversation between Ms. Minton and Mr. DeLoach, in deciding this matter we have considered the facts in the light most favorable to the opponent of the motion, TFMIC. Viewing the facts in this light, we agree with the trial court that the exclusionary clause is not applicable in that the insured's mailing of the ring did not constitute neglect to use all reasonable means to protect the covered property at and after the time of loss.

■ Concerning the award for failure to pay the loss in good faith, TCA § 56–7–105(a) provides:

The insurance companies of this state, and foreign insurance companies and other persons or corporations doing an insurance or fidelity bonding business in this state, in all cases when a loss occurs and they refuse to pay the same within sixty (60) days after a demand shall have been made by the holder of the policy or fidelity bond on which the loss occurred, shall be liable to pay the holder of the policy or fidelity bond, in addition to the loss and interest thereon, a sum not exceeding twenty-five percent (25%) on the liability for the loss; provided, that it shall be made to appear to the court or jury trying the case that the refusal to pay the loss was not in good faith, and that such failure to pay inflicted additional expense, loss, or injury upon the hold-

er of the policy or fidelity bond; and provided further, that such additional liability, within the limit prescribed, shall, in the discretion of the court or jury trying the case, be measured by the additional expense, loss, and injury thus entailed.

■■■■ This statute is penal in nature and must be strictly construed. Before there can be a recovery of the penalty, (1) the policy of insurance must, by its terms, have become due and payable, (2) a formal demand for payment must have been made, (3) the insured must have waited 60 days after making demand before filing suit (unless there was a refusal to pay prior to the expiration of the 60 days), and (4) the refusal to pay must not have been in good faith. *Palmer v. Nationwide Mutual Fire Insurance Co.,* 723 S.W.2d 124, 126 (Tenn. App.1986).

Appellant contends that the penalty should not be applicable because the insured ignored the instructions of the adjuster not to mail the ring. We are in agreement with the trial court that the plaintiff carried her burden of proof and that the failure to pay was not in good faith. The insistence that she have the ring repaired locally rather than mailing it to the original vendor for repair as a prerequisite to coverage was not reasonable and placed a limitation on coverage which, according to this record, was not contained in the policy.

The judgment of the trial court is affirmed. Costs of this cause are taxed to the appellant for which execution may issue if necessary.

TOMLIN, P.J. (W.S.), and CRAWFORD, J., concur.