IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Submitted on Briefs, June 19, 2007

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, v.
UNITRAC RAILROAD MATERIALS, INC.

Direct Appeal from the Circuit Court for Knox County
No. 2-50-04     Hon. Harold Wimberly, Circuit Judge

No. E2006-02679-COA-R3-CV  - FILED AUGUST 29, 2007

Plaintiff sought to recover payment of workers compensation benefits via subrogation against the defendant.  The Trial Court entered Judgment for defendant.  We affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Joseph L. Broy, Germantown, Tennessee, for appellants.

Malcolm L. McCune, Nashville, Tennessee, for appellee.

OPINION

Plaintiff, Travelers Property Casualty Company of America ("Travelers"), brought this action against Unitrac Railroad Materials, Inc. ("Unitrac"), asserting that it was entitled to maintain a claim against Unitrac, since it had a contract of workers' compensation insurance with Labor Headquarters/Staffing Headquarters ("Labor"), and was thereby subrogated.

Travelers asserted that on August 27, 2002, Calvin Jones, an employee of Labor, was loading a railroad track on a flat bed rail car, when a track hoe being operated by defendant Unitrac malfunctioned, causing the railroad track to fall on Jones, resulting in severe injuries.  Travelers asserted that Unitrac was negligent in the operation of the track hoe and use of the support chains,

and that such negligence was the proximate cause of Jones' injuries. Further, that it had paid over $199,255.90 in benefits to Jones on behalf of Labor, and had a continuing obligation.

Travelers asserted that Labor and Unitrac had a Service Agreement, whereby Unitrac agreed to use all due care in protecting Labor's employees from exposure to hazardous conditions/materials, and that under the terms of this agreement, Unitrac agreed to indemnify and hold Labor harmless from any claims for bodily injuries arising out of the use of Unitrac machinery or equipment by Labor's employees. Further, that Unitrac had breached the agreement, that Travelers had paid and continued to pay Jones' medical expenses, and was subrogated to the rights of Labor for full recovery of the payments.

Unitrac moved to dismiss under Tenn. R. Civ. P. 12.06, asserting that the Complaint failed to state a claim upon which relief could be granted. Unitrac conceded that it had a service agreement with Labor, whereby Labor was to provide temporary employees to Unitrac, and Unitrac agreed to supervise and control the conduct of the employees, and that Labor agreed to maintain workers' compensation on all of such employees.

Unitrac argued that it owed no duty of reasonable care to Travelers, and that Travelers was not a party to the service agreement, and was not a third-party beneficiary. Also it was a co-employer of Jones, such that he (and Travelers, derivatively) was barred from filing suit against Unitrac under the exclusivity provision contained in Tenn. Code Ann. §50-6-108. The service agreement was attached as an exhibit.

Travelers filed a Memorandum in Opposition to the Motion, which asserted that Travelers was subrogated to the rights of its insured, pursuant to Tenn. Code Ann. §50-6-112, as well as the theory of "conventional subrogation".

On November 15, 2006, the Trial Court entered an Order finding that the Motion to Dismiss was well-taken.[1] Travelers has appealed, insisting that it has a right to maintain its action against Unitrac.

It is well settled that an injured employee subject to workers compensation law cannot bring a tort action against his employer, as the workers compensation law provides his sole and exclusive remedy. Tenn. Code Ann. §50-6-108. An employee whose injury "was caused under circumstances creating a legal liability against some person other than the employer to pay damages" can sue said non-employer for those damages, however, the employer who has paid workers' compensation benefits will have a subrogation lien against the recovery. Tenn. Code Ann. §50-6-102.

---

[1]The Order recites in part: "Upon consideration of the motion, the memorandum submitted in support and in opposition thereto, the exhibits, and the entire record in this cause, the court is of the opinion that the motion is well-taken and should be granted." By considering exhibits, the Motion to Dismiss was converted to a summary judgment pursuant to Tenn. R. Civ. P. 56.

Travelers argues that, pursuant to Tenn. Code Ann. §50-6-102, it is considered an "employer" and can be subrogated to the right of recovery the injured worker, Jones, would have against Unitrac. This argument ignores the fact, however, that Unitrac can also be considered an employer of Jones, if it meets the co-employer test set forth in *Winchester v. Seay*, 409 S.W.2d 378 (Tenn. 1966). If Unitrac is Jones' employer, pursuant to the statutory scheme, it cannot be held liable in tort, as workers' compensation law is the exclusive remedy for Jones and anyone seeking to stand in his shoes.

In *Winchester*, the Supreme Court held that a "special" employer would be liable for workers' compensation for an employee loaned from a "general" employer if:

1)  the employee had made a contract of hire, express or implied, with the special employer;

2)  the work being done is essentially that of the special employer; and

3)  the special employer has the right to control the details of the work.

409 S.W.2d at 382.[2]

In this case, the work being done was that of Unitrac, and Unitrac had the right to control the details of the work, as these facts are specified in the written agreement between Labor and Unitrac. Regarding whether the employee made a contract with Unitrac, the Supreme Court has held that an employee of a temporary staffing service (such as Labor) is aware that he will actually be working for the clients of the staffing service, and that by entering into such an arrangement, the employee consents to work for "special employers", *Bennett v. Mid-South Terminals Corp.*, 660 S.W.2d 799 (Tenn. 1983).

In *Bennett*, the Court held that where the employee entered into an employment arrangement with a temporary labor service, the employee consented to work for the customers by his agreement with the labor service and by consenting to the specific work assignment given. *Id.* Here, Jones worked for Labor who contracted out his services for its clients, including Unitrac, and by working for Unitrac he consented to such arrangement by accepting that particular assignment. On these facts, there was an implied contract with Unitrac. *Id., see also Abbott v. Klote International Corp.*, 1999 WL 172646 (Tenn. Ct. App. Mar. 24, 1999). On this record, Jones was employed by both Unitrac and Labor, and Unitrac has tort immunity as an employer pursuant to Tenn. Code Ann. §50-6-108. Accordingly, Travelers cannot maintain a cause of action against Unitrac in tort, since

---

[2] The special and general employers can agree that the general employer will be responsible for maintenance of worker's comp insurance and payment of benefits by contract, and this does not affect the special employer's immunity. *See, e.g.*, *Bennett v. Mid-South Terminals Corp.*, 660 S.W.2d 799 (Tenn. 1983); *Tedder v. Union Planters Corp.*, 2001 WL 589139 (Tenn. Ct. App. May 29, 2001); Tenn. Workers' Comp. Prac & Proc. §3:2.

Jones has no such cause of action.

Finally, Travelers argues that it has a cause of action against Unitrac based on the language in the agreement between Labor and Unitrac, whereby Unitrac agreed to use due care to protect employees from exposure to hazardous conditions, and agreed to indemnify and hold Labor harmless "from and against any and all claims, damages, costs, expenses, liabilities, suits at law or in equity, fines, penalties or other damages arising from a breach of this provision." Travelers argues that when it made payment on Labor's behalf of workers' compensation benefits, it became a "real party in interest" and stepped into the shoes of its insured, assuming its insured's right to seek recovery of benefits paid. *See National Cordova Corporation v. City of Memphis*, 380 S.W.2d 793 (Tenn. 1964). It also argues that the exclusivity provision contained in Tenn. Code Ann. §50-6-108 does not apply, since subsection (b) of that statute states: "This section shall not be construed to preclude third party indemnity actions against an employer who has expressly contracted to indemnify such third party."

Tenn. Code Ann. §50-6-108 does not bar a third party indemnity action based on express contract, as we have previously held. *Easter v. Exxon*, 699 S.W.2d 168 (Tenn. Ct. App. 1985). As Travelers points out, the statute was amended in 1985 to expressly provide for this. Tenn. Code Ann. §50-6-108(b). The cases considering this issue have involved a contract between the parties to the lawsuit, and did not discuss whether an insurance company could "step into the shoes" of its insured and assume its insured's position relative to said contract. *See Easter*, *supra*; *Black v. UPS*, 797 F.2d 290 (6th Cir. 1986).

Unitrac counters that Travelers is not a party to the agreement in question, and thus cannot sue for a breach of that agreement. *See Owner-Operator Independent Drivers Association, Inc. v. Concord EFS, Inc.*, 59 S.W.3d 63 (Tenn. 2001). Unitrac claims that the only exception to this rule is one who is an intended third party beneficiary of the contract, which Unitrac argues is not the case here.

As the Supreme Court explained in the above case:

Generally, contracts are presumed to be "executed for the benefit of the parties thereto and not third persons." *Oman Constr. Co. v. Tennessee Cent. Ry. Co.*, 212 Tenn. 556, 370 S.W.2d 563, 572 (1963). Indeed, traditional privity rules provided that those who were not parties to a contract had no right to sue for its breach. See generally Richard A. Lord, Williston on Contracts § 37:1 (4th ed.2000); see also, e.g., *Exchange Bank of St. Louis v. Rice*, 107 Mass. 37 (1871) ("[A] person who is not a party to a simple contract ... cannot sue on the contract, and ... a promise made by one person to another, for the benefit of a third person who is a stranger to the consideration, will not support an action by the latter."). The inflexibility of that rule, however, has given way to an exception when the contracting parties express an intent that the benefits of the contract flow to a third party. As stated by one court, "The third-party beneficiary concept arises from the notion that 'it is just and practical

> to permit the person for whose benefit the contract is made to enforce it against one whose duty is to pay' or perform." *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38, 495 N.Y.S.2d 1, 485 N.E.2d 208, 211 (1985) (quoting *Seaver v. Ransom*, 224 N.Y. 233, 120 N.E. 639, 640 (1918)).

*Id.* at 68.

The facts in *Owner-Operator* were that plaintiffs were independent truck drivers who purchased fuel from Flying J and Pilot, and used credit cards issued by EFS National Bank. EFS National Bank had an agreement with Visa and Mastercard, and also had agreements with Flying J and Pilot, all of which prohibited the imposition of surcharges on credit card purchases of fuel, but the stations apparently imposed such surcharges anyway. *Id.* The plaintiffs thus sued to enforce the agreements between the stations and EFS, and between EFS and Visa/Mastercard, asserting that they were intended third-party beneficiaries of the agreements.

The Supreme Court disagreed, and provided the proper framework for analyzing when a party is an intended third party beneficiary of a contract, as follows:

> A third party is an intended third-party beneficiary of a contract, and thus is entitled to enforce the contract's terms, if
>
> (1) The parties to the contract have not otherwise agreed;
>
> (2) Recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties; and
>
> (3) The terms of the contract or the circumstances surrounding performance indicate that either:
>
> (a) the performance of the promise will satisfy an obligation or discharge a duty owed by the promisee to the beneficiary; or
>
> (b) the promisee intends to give the beneficiary the benefit of the promised performance.
>
> In so holding, we reiterate that our primary focus is upon the intent of the contracting parties. Thus, part (1) of the test provides that courts should honor any expression of intent by the parties to reserve to themselves the benefits of the contract. Likewise, part (2) ensures that third-party beneficiaries will be allowed to enforce the contract only when enforcement would further the parties' objectives in making the agreement. In applying this part, courts should look to what the parties intended to accomplish by their agreement, and a third party should not be deemed an intended beneficiary if so doing would undermine the parties' purposes. Part (3) provides

guidance for differentiating between intended and incidental beneficiaries.

In part (3), we focus upon the promisee's intent, and not the promisor's, because "[i]n third party cases, the right of [the third] party does not depend upon the purpose, motive, or intent of the promisor. The motivating cause of [the promisor's] making the promise is usually his desire for the consideration given by the promisee." Subsection (a) of this part encompasses those beneficiaries which under the Restatement (First) would have been deemed "creditor beneficiaries." Though this section is based upon the Restatement (Second), our analysis is broader in that it focuses upon the promisee's intent to "discharge a duty" rather than upon obligations of the promisee to pay money to the beneficiary. We choose this analysis because of the foreseeable circumstances under which analysis of the promisee's intent would fit more comfortably within the analytical framework of subsection (a) even though the duty owed to the beneficiary is not easily convertible into money.

Notably, the contracting parties in subsection (a) cases will not necessarily express a direct desire to confer a benefit upon the third party, for the promisee often may be motivated by a self-interested intent to discharge the duty owed to the third party. As noted in one California case, "in contracts of the creditor beneficiary type the main purpose of the promisee is not to confer a benefit on the third party beneficiary, but to secure the discharge of his debt or performance of his duty to the third party." Regardless of self-interest, however, a clear expression of intent to discharge a duty owed by the promisee to the third party will satisfy subsection (a).

Under subsection (b), the analysis more directly centers upon whether the promisee actually intends to confer a benefit upon the third party. Part (b) analysis will encompass those beneficiaries who under the Restatement (First) were deemed "donee beneficiaries," and it will also encompass those beneficiaries who do not seem to fit clearly within either of the original Restatement categories of donee or creditor beneficiary, yet who clearly were intended by the parties to receive the primary benefit of the contract.

*Id.* at 70-71.

In this case, the agreement is silent regarding whether the parties intended to "reserve to themselves the benefits of the contract", and part one of the test is not controlling. Regarding part two, there has been no showing that allowing Travelers to act as a third-party beneficiary to this contract would effectuate the parties' intent in the contract. The indemnification language relied upon in the contract deals with protecting Labor's employees from exposure to hazardous conditions/materials, and would be for the benefit of the employees and Labor only. Regarding part three of the test, there is no indication that performance of the promise will satisfy an obligation owed by Unitrac to Travelers, or that Unitrac intended to give Travelers the benefit of the promise. In fact, the contract indicates otherwise, in that it recognizes that Labor will be responsible for the

-6-

maintenance of workers' compensation insurance, thus implying that its workers' compensation insurer will be looked to for the payment of benefits if an employee is injured. Accordingly, Travelers is unable to show that it is an intended third-party beneficiary of this contract, and has no standing to file a claim based on the breach of the contract.

We affirm the Trial Court's Judgment dismissing Travelers claims, and impose the cost of the appeal to Travelers Property Casualty Company of America.

_____
HERSCHEL PICKENS FRANKS, P.J.