767 F.2d 921
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ST. PAUL FIRE & MARINE INSURANCE COMPANY, PLAINTIFF-APPELLANT,
v.
ELGIN SMITH, DEFENDANT-APPELLEE.
 NO. 83-5516
 United States Court of Appeals, Sixth Circuit.
 6/26/85
 
 E.D.Tenn.
 REVERSED IN PART, VACATED AND REMANDED IN PART
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE
 Before: CONTIE and WELLFORD, Circuit Judges; and KRENZLER, District Judge.*
 PER CURIAM.
 
 
 1
 St. Paul Fire & Marine Insurance Company (St. Paul), the plaintiff, appeals from a district court decision dismissing this declaratory judgment action on a professional liability insurance policy and awarding defendant Smith $529,317.55 on a counterclaim for breach of contract. This is a diversity case controlled by Tennessee law. For the reasons set forth below, we reverse in part, vacate in part and remand for further proceedings.
 
 I.
 
 2
 In March 1972, St. Paul issued an Insurance Agents' and Brokers' Errors and Omissions policy to Elgin Smith Insurance Agency, Inc. The policy provided liability coverage on:
 
 
 3
 all sums which the Insured shall become legally obligated to pay on account of any claim made against the Insured and caused by any negligent act, error or omission of the Insured or any other person for whose acts the Insured is legally liable . . ..
 
 
 4
 The policy specifically excluded coverage for dishonest, fraudulent, criminal, malicious, libelous and slanderous acts. Subject to a $2,000 deductible, St. Paul's maximum exposure was $250,000 per claim. The policy contained the following notice requirement:
 
 
 5
 NOTICE OF CLAIM OF SUIT. As soon as practicable notice must be given the Company on Insured receiving information as to his alleged negligent act, error or omission, with full particulars of any claim arising therefrom. If suit is brought the Insured must immediately forward to the Company every summons or other process received by him. [Emphasis supplied.]
 
 
 6
 Somtime later, a Real Estate Agents' Errors and Omissions endorsement was added to the policy under which a real estate corporation owned by Smith, Elgin Smith Agency, Inc. (later renamed Elgin Smith, Inc., Realtors), became an additional named insured. Both Elgin Smith Insurance Agency, Inc. and Elgin Smith Agency, Inc. paid a separate premium. The endorsement provided, however, that inclusion of more than one insured would not increase the limits of St. Paul's liability.
 
 
 7
 In July 1977, James McCraw, by next friend William Hudson, commenced an action in the Tennessee courts against Elgin Smith in his individual capacity, Elgin Smith Agency, Inc., Elgin Smith, Inc., Realtors, Gene Campbell (an employee of Elgin Smith Agency, Inc.) and other defendants. Elgin Smith Insurance Agency, Inc. was not named as a defendant. The complaint alleged that the defendants had fraudulently induced McCraw to purchase a financially troubled apartment complex with knowledge that McCraw was mentally incompetent at the time of the transaction. Smith consulted an attorney about whether St. Paul should be notified. After counsel opined that coverage would be excluded under the policy because McCraw's complaint alleged fraud, Smith did not inform St. Paul of the lawsuit and did not send the complaint and other legal papers to St. Paul.
 
 
 8
 Approximately three months later, however, Smith learned that McCraw intended to amend his complaint to add allegations of negligence. On November 2, 1977, Smith notified St. Paul of the pending suit. On the same day, Elgin Smith Agency, Inc., Elgin Smith Insurance Agency, Inc. (not a party to the McCraw law suit) and St. Paul executed an agreement under which St. Paul agreed to defend the McCraw action but reserved the right to deny coverage. On November 23, 1977, the state court granted McCraw leave to amend his complaint in order to add allegations of negligence.
 
 
 9
 The McCraw action was tried on April 24, 1979. On July 24, 1979, the Chancellor entered an order rescinding the real estate transaction and enjoining foreclosure on the property. The court ordered the defendants to refund a $125,000 down payment that McCraw had made. The court also awarded McCraw $75,000 in incidental damages and $666.66 per month from June 1, 1974 to the date of judgment. The court stated that the latter portion of the award, which was assessed only against defendants Smith, Campbell, Elgin Smith Agency, Inc. and Elgin Smith, Inc., Realtors, was:
 
 
 10
 [F]or compensation for the loss incurred by the willful and gross negligence of these defendants in reference to the misrepresentation and mishandling of the subject of a monthly draw from said property (App., Vol. I at 27). [Emphasis supplied.]
 
 
 11
 The total monetary award amounted to $241,995.98. As a result of the accrual of post-judgment interest, this amount increased to $427,454.04 by the time the district court entered judgment in the present action. On appeal of the Chancellor's decision, the Tennessee Court of Appeals affirmed, stating:
 
 
 12
 We think, as the chancellor did, that the above misrepresentation are proof that Gene Campbell was guilty of negligence and gross negligence in the discharge of his duty to McCraw and the seller Watkins. Since Campbell is an agent of the Elgin Smith Agency, Inc. and Elgin Smith, his wrongdoing would be imputed to the Agency and Smith (App., Vol. II at 35). [Emphasis supplied.]
 
 
 13
 The state court judgment became final after the Tennessee Supreme Court dismissed as untimely an application for permission to appeal.
 
 
 14
 By letter of September 3, 1982, Smith demanded that St. Paul satisfy the state court judgment. Upon receiving the letter, St. Paul filed t is declaratory judgment action against only Smith in his individual capacity. The final pre-trial order reveals that St. Paul contended that coverage either was unavailable because Smith had not complied with the notice requirements of the insurance policy or was excluded because the state court had found that Smith had defrauded McCraw (app., vol. I at 42). Smith counterclaimed for breach of the insurance contract.
 
 
 15
 Although the district court held that Smith had complied with the notice requirements of the policy, it did not address the issue of whether, in light of the findings by the state trial court and court of appeals, coverage was excluded on the ground that Smith had defrauded McCraw. Nor did the district court expressly address the question of whether Smith was entitled to compensation in connection with the order to refund McCraw's $125,000 down payment. The court did hold that since both Elgin Smith Insurance Agency, Inc. and Elgin Smith Agency, Inc. were named insureds, the insurance policy contained two coverages. Hence, subject to two deductibles of $2,000 each, St. Paul's exposure was held to be $500,000 rather than $250,000. The court then awarded Smith $423,454.04 on the counterclaim. This award consisted of the amount of the state court judgment ($241,995.98) plus accrued post-judgment interest minus the deductibles. In addition, the court granted Smith an additional twenty-five percent damage award under Tenn. Code Ann. Sec. 56-7-105(a). The total judgment amounted to $529,317.55. On this appeal, St. Paul contends that the district court erred in: (1) failing to join an indispensable party, (2) holding that Smith had complied with the notice provisions of the insurance policy, (3) not finding that all coverage was excluded under the policy, (4) finding that the insurance policy contained two coverages rather than one, (5) not finding that Smith was unentitled to compensation in connection with the refund of McCraw's $125,000 down payment and (6) finding that Smith was entitled to the twenty-five percent damage award under Tenn. Code Ann. Sec. 56-7-105(a). We address each of these issues in turn.
 
 II.
 
 16
 St. Paul's first argument is that the district court sua sponte should have joined Elgin Smith Insurance Agency, Inc. and Elgin Smith Agency, Inc. as indispensable parties under Federal Rule of Civil Procedure 19. This omission, St. Paul contends, could potentially expose it to multiple and inconsistent obligations under the insurance contract.
 
 
 17
 Although the indispensable party question was not raised below, precedent indicates that the indispensable party issue may be addressed for the first time on appeal in order to protect absent parties who might be adversely affected by a judgment. See NLRB v. Doug Neal Management Co., 620 F.2d 1133, 1139 (6th Cir. 1980); Boles v. Greeneville Housing Authority, 468 F.2d 476, 479 n.4 (6th Cir. 1972). This rule clearly does not apply here, however, because St. Paul, who assertedly will be injured if Elgin Smith Insurance Agency, Inc. and Elgin Smith Agency, Inc. are not joined, is not an absent party. St. Paul has not alleged that either of the two absent corporate entities may be adversely affected by a judgment in this case. Moreover, St. Paul, as plaintiff, had ample opportunity to name the absent corporate entities in its complaint. St. Paul's indispensable party argument is without merit.
 
 
 18
 Second, St. Paul contends that since Smith waited until November 2, 1977 to inform it that he had been sued by McCraw, Smith failed both to afford notice of the suit 'as soon as practicable' and to forward the complaint 'immediately' as required by the insurance policy. We disagree. Under Tennessee law, the duty to give notice 'as soon as practicable' requires the insured to afford notice:
 
 
 19
 [W]hen he becomes, or should become, aware of facts which would suggest to a reasonably prudent person that the event for which coverage is sought might reasonably be expected to produce a claim against the insurer.
 
 
 20
 Reliance Insurance Co. v. Athena Cablevision Corp., 560 S.W.2d 617, 618 (Tenn. 1977). See also Tennessee Farmers Mutual Insurance Co. v. Nee, 643 S.W.2d 673, 675 (Tenn. App. 1982). Since the insurance policy in question excluded coverage for fraudulent conduct and since McCraw's original complaint alleged only fraud, a reasonably prudent person would not have expected or become aware in July 1977 that a claim would arise against St. Paul even if McCraw prevailed. Such expectation or awareness could reasonably have arisen in this case only when Smith learned that McCraw intended to amend his complaint to allege negligence. The record indicates that when Smith became aware of McCraw's intentions, the former immediately notified St. Paul and forwarded the relevant legal papers. Notification occurred three weeks before McCraw actually amended the complaint. We agree with the district court that Smith complied with the notice provision of the insurance policy.
 
 
 21
 St. Paul's third assignment of error is more problematic. According to St. Paul, since the state trial court found that Smith, his companies or his agent had misrepresented facts to McCraw in a willfully and grossly negligent manner, and since the Tennessee Court of Appeals affirmed stating that Smith's misrepresentations were negligent and grossly negligent, Smith acted dishonestly, malciously or fraudulently within the meaning of the exclusion provisions of the insurance policy. St. Paul concludes, therefore, that there is no coverage in this case.
 
 
 22
 Smith makes two responses. First, he argues that since St. Paul asserted only the exclusion for fraud below, the company may not now argue dishonesty and malice. This point is well taken; the district court's final pre-trial order indicates that St. Paul claimed only that Smith had been guilty of fraud.[1]
 
 
 23
 Second, Smith contends that since the state courts found that he, his companies or his agent had been negligent, coverage clearly was present under the insurance policy. The state courts, however, did not state that Smith's misrepresentations were merely negligent. Rather, the misrepresentations were characterized as being willfully and/or grossly negligent. Thus, the central issue in connection with this assignment of error is whether, under Tennessee law, willfully or grossly negligent misrepresentations constitute fraud for purposes of applying the exclusion provisions of an insurance contract. Since the district court did not address this issue, we vacate the judgment and remand so that the district court may consider the question. We express no view on this issue at this time because a district court's interpretation of state law is entitled to considerable weight where, as here, the district court is located in the state whose substantive law governs the action. See Bagwell v. Canal Insurance Co., 663 F.2d 710, 712 (6th Cir. 1981); Randolph v. New England Mutual Life Insurance Co., 526 F.2d 1383, 1385 (6th Cir. 1975).
 
 
 24
 Since the district court might find on remand that Smith's conduct constituted fraud within the meaning of the exclusion provisions of the insurance policy, we consider St. Paul's assignments of error concerning damages. First, St. Paul contests the district court's finding that because both Elgin Smith Insurance Agency, Inc. and Elgin Smith Agency, Inc. were named insureds, the company's maximum exposure was $500,000 rather than $250,000. We need not address the issue of whether St. Paul's exposure could ever have been $500,000 because it is clear on the facts of this case that the company's maximum exposure was $250,000. The key facts relevant to this assignment of error is that Elgin Smith Insurance Agency, Inc. was not a party to McCraw's state court action and no judgment was entered against it. Thus, even assuming for purposes of argument that the two companies each had $250,000 coverage in connection with the McCraw transaction, St. Paul's obligation to compensate Elgin Smith Insurance Agency, Inc. never arose.
 
 
 25
 This determination does not entail the conclusion, however, that the district court erred in awarding $423,454.04 to Smith. Of central importance is the fact that the judgment in McCraw's state court action totaled $241,995.98, a figure within the $250,000 coverage limit. The remainder of the $423,454.04 constituted accrued post-judgment interest which St. Paul separately agreed to pay in Part III of the insurance contract:
 
 
 26
 DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS. With respect to such insurance as is afforded by this Policy the Company shall:
 
 
 27
 * * *
 
 
 28
 * * *
 
 
 29
 (B) Pay . . . all costs taxed against the Insured in any such suit, all expenses incurred by the Company, all interest accruing after entry of judgment until the Company has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the Company's liability thereon. . . . [Emphasis supplied.]
 
 
 30
 Moreover, Tennessee authority indicates that an insurer is liable for post-judgment interest regardless of policy limits once the insurer agrees to defend and, following an adverse judgment, appeals or declines to pay. See Casey-Hedges Company v. Southwestern Surety Co., 139 Tenn. 63, 68-72 (1917).
 
 
 31
 St. Paul's second assignment of error concerning damages is that Smith is not entitled to compensation for either the $125,000 down payment that was refunded to McCraw or post-judgment interest on that amount. St. Paul contends that since Smith and his companies merely refunded the $125,000, they were returned to their original position and suffered no loss.[2] On the other hand, the coverage provisions of the insurance policy state that St. Paul must 'pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay on account of any claim made against the Insured . . ..' Since the district court did not expressly consider this question involving interpretation of the language of the policy, we instruct the district court to consider the issue on remand.
 
 
 32
 St. Paul's final argument is that Smith is not entitled to an additional twenty-five percent damage award under Tenn. Code Ann. Sec. 56-7-105(a) as a result of the company's failure to pay the judgment within sixty days after demand. We agree with St. Paul and reverse this damage award. Tennessee authority clearly holds that Sec. 56-7-105(a) applies only 'to that class of written contracts, which written contracts themselves, [bear] interest from the time they [become] due.' Tennessee Farmers Mutual Insurance Co. v. Cherry, 374 S.W.2d 371, 372 (Tenn. 1964). Smith contends that the insurance policy under review bears interest because St. Paul agreed to pay the post-judgment interest on any judgment rendered against the insured companies. The Tennessee cases hold, however, that the type of interest referred in Sec. 56-7-105(a) is that which accrues on an underlying contractual obligation rather than post-judgment interest. See Cherry, 374 S.W.2d at 372; Draper v. Great American Insurance Co., 458 S.W.2d 428, 433 (Tenn. 1970). Indeed, the Draper case involved an insurance policy in which the insurer agreed to pay post-judgment interest under language identical to that found in Part III of the St. Paul insurance policy. Despite such language, the Tennessee Supreme Court held Sec. 56-7-105(a) inapplicable. We hold that the Cherry and Draper cases are controlling and that the damage award under Sec. 56-7-105(a) cannot stand.
 
 III.
 
 33
 The award of damages under Tenn. Code Ann. Sec. 56-7-105(a) is REVERSED. The remainder of the judgment is VACATED and the case is REMANDED for further proceedings consistent with this opinion. Defendant Smith shall bear the costs of this appeal.
 
 
 
 *
 The Honorable Alvin I. Krenzler, Judge, United States District Court for the Northern District of Ohio, sitting by designation
 
 
 [1]
 It has been said that 'fraud' is a synonym for 'dishonesty.' 37 C.J.S. Fraud p1, 206; BLACK'S LAW DICTIONARY 594 (5th ed.)
 
 
 [2]
 Smith does not respond to this argument in his brief