IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 15, 2021 Session

## SHANNON GILES, ET AL. v. GEICO GENERAL INSURANCE COMPANY

**Appeal from the Circuit Court for Marion County**
**No. 21354    J. Curtis Smith, Judge**
_____

**No. M2021-00165-COA-R3-CV**
_____

This appeal involves the applicability of Tennessee Code Annotated section 56-7-105, the bad faith penalty statute, to automobile insurance policies. The trial court granted the insurance company's motion for summary judgment holding that Tennessee Code Annotated section 56-7-105 did not apply to automobile insurance policies. The insured appeals. We affirm.

**Tenn. R. App. R. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which W. NEAL MCBRAYER and ARNOLD B. GOLDIN, JJ., joined.

Norris A. Kessler, III, Winchester, Tennessee, for the appellants, Shannon Giles and Thomas Giles.

C. Benton Patton and Britney K. Pope, Brentwood, Tennessee, for the appellee, Geico General Insurance Company.

## OPINION

### I.    FACTS & PROCEDURAL HISTORY

On December 13, 2012, Mrs. Shannon Giles and Mrs. Judith Sweatman were sitting in Mrs. Giles's vehicle at a red light when another vehicle struck them from behind. The driver of the vehicle that rear-ended them was Ms. Mandy Harris.[1] When the police and

---

[1] Ms. Harris was arrested and charged with DUI. She would later plead guilty. She was an uninsured/underinsured motorist as defined by Tennessee's uninsured-motorist act, because the limits of liability insurance available to Ms. Harris were less than Mrs. Giles's uninsured/underinsured motorist insurance coverage. Tenn. Code Ann. § 56-7-1202.

an ambulance arrived, Mrs. Giles and Mrs. Sweatman were evaluated. Mrs. Giles stated that she was scared, nervous, in shock; and her neck was hurting. When Mrs. Giles's husband arrived at the scene, he took both Mrs. Giles and Mrs. Sweatman to Erlanger Hospital. At Erlanger Hospital, Mrs. Giles was evaluated, but the hospital did not perform x-rays. Mrs. Giles was given muscle relaxers and pain pills, told to follow up with her primary care provider, and released from the hospital that night. The following day, Mrs. Giles gave a recorded statement of the accident to her insurance provider, Geico General Insurance Company. Thereafter, Geico completed its liability investigation and found that there was zero percent negligence on the part of Mrs. Giles. Mrs. Giles underwent therapy and various tests in the months that followed. She was released from further treatment in December, 2013.

In October 2013, Geico sent a letter to counsel for Mrs. Giles advising that Mrs. Giles had exhausted all of her medical payments coverage available to her under the terms of her insurance policy. Geico eventually made a payment of $10,000 directly to counsel for Mrs. Giles, which represented her available medical payments coverage. On November 4, 2013, counsel for Mrs. Giles sent a letter to Geico which advised Geico of the following:

1. Mrs. Giles received a policy limits offer of $25,000 from Alfa Insurance Company, the liability carrier of Ms. Harris;
2. Mrs. Giles's damages exceeded the policy limits of Ms. Harris;
3. Mrs. Giles requested that Geico consent to settle and release Ms. Harris and that Geico waive its subrogation claim against Ms. Harris; and
4. Mrs. Giles demanded $75,000 to settle her underinsured motorist claim with Geico.

In response, Geico sent a letter to counsel for Mrs. Giles advising him that additional information was needed in order to evaluate Mrs. Giles's injury claim. However, Geico made an offer of settlement of $22,255 to counsel for Mrs. Giles.

On November 27, 2013, Mr. and Mrs. Giles filed a lawsuit against Ms. Harris in the Marion County Circuit Court. In March 2015, Geico sent a letter to counsel for Mr. and Mrs. Giles offering $25,000 in underinsured motorist coverage, plus the $10,000 in medical payments coverage which had already been paid, in order to settle the claim. Counsel for Mr. and Mrs. Giles rejected the offer. In April 2015, counsel for Mr. and Mrs. Giles countered with an offer and sent a letter to Geico and counsel for Ms. Harris demanding a settlement of $110,000.[2] Additionally, counsel for Mr. and Mrs. Giles advised that he would consider it an act of bad faith if policy limits were not offered within ten days. Geico responded by stating that they could neither accept nor reject the demand for policy limits at the time because they were having a third party review the medical bills that were submitted. After not hearing back from Geico about the possibility of settlement, counsel

---

[2] Counsel for Mr. and Mrs. Giles also represented the Sweatmans in the underlying case against Ms. Harris and made a demand of $40,000 for the Sweatmans in this letter.

- 2 -

for Mr. and Mrs. Giles sent another letter to Geico in June 2015 advising them that if they were not ready to settle the case then the parties would need to move forward with setting a trial date. Geico responded by stating that the matter was transferred to a different adjuster and the new adjuster was in the process of reviewing the file. In October 2015, counsel for Mr. and Mrs. Giles sent an offer of settlement and enclosed an offer of judgment for $110,000. Again, counsel for the Giles advised that he would be forced to take further steps regarding Geico's apparent bad faith if no fair and reasonable settlement offer was made.

On February 9, 2016, Dr. Lloyd Keith Brown issued his independent medical evaluation of Mrs. Giles. Dr. Brown concluded that Mrs. Giles's "[t]otal impairment [was] 11% whole person." In his deposition, Dr. Brown stated that throughout his exam he saw no evidence of Mrs. Giles embellishing her injuries or pain in any way. In March 2016, counsel for Mr. and Mrs. Giles sent a letter to Geico advising them of the current demand of $110,000, less the $25,000 tendered by Alfa and the $10,000 medical payments coverage already paid. In a letter to counsel for Ms. Harris, Geico agreed to waive any potential subrogation it might have had against Ms. Harris under any the provisions of its policy. In April 2016, counsel for Mr. and Mrs. Giles sent yet another letter advising Geico that Mr. and Mrs. Giles were willing to settle the matter for the total sum of $105,000. This sum included the $25,000 tendered by Alfa and the $10,000 in medical payments coverage already paid by Geico.

In April 2016, the case was tried before a jury. At the conclusion of the trial, the jury entered a total verdict of $300,082.16 for Mr. and Mrs. Giles.[3] On May 11, 2016, the trial court entered its final judgment confirming the jury award. At the end of May, Geico paid the sum of $75,000, the applicable underinsured coverage limits, into the Marion County Circuit Court. In addition to the $75,000, Geico had previously paid the $10,000 in medical payments coverage to Mr. and Mrs. Giles. In June 2016, a hearing on all pending post-trial motions was held.[4]

On September 6, 2016, Mr. and Mrs. Giles filed a lawsuit in the Marion County Circuit Court seeking additional damages, pursuant to Tennessee Code Annotated section 56-7-105, for a bad faith claim against Geico as the uninsured/underinsured motorist carrier

---

[3] Mrs. Giles was awarded non-economic damages in the amount of $25,000 for past pain and suffering, $50,000 for future pain and suffering, $10,000 for past loss of ability to enjoy life, $50,000 for future loss of ability to enjoy life, and $100,000 for permanent impairment. She was awarded economic damages in the amount of $46,914.27 for past medical care/services, $8,600 for future medical care/services, and $1,567.89 for past out-of-pocket expenses. Mr. Giles was awarded non-economic damages of $8,000 for loss of consortium of his wife.

[4] As a result of that hearing, the trial court reduced the judgment to $250,000 in accordance with the ad damnum clause in the complaint and granted the Giles's request for discretionary costs in the sum of $3,711.08.

in the underlying suit. Specifically, Mr. and Mrs. Giles argued that Geico intentionally and maliciously refused to fairly and reasonably pay Mrs. Giles's uninsured/underinsured motorist claim. In October 2016, Geico filed an answer to the complaint. In August 2017, Geico filed a motion to dismiss arguing that Mr. and Mrs. Giles failed to state a claim for recovery against an uninsured/underinsured motorist carrier pursuant to Tennessee Code Annotated section 56-7-105, and that Tennessee did not recognize a claim for the common law tort of bad faith. On November 3, 2017, Mr. and Mrs. Giles filed a response to Geico's motion to dismiss arguing that the dismissal of their cause of action for failure to state a claim would be improper because the complaint clearly detailed Geico's bad faith in dealing with the underlying uninsured/underinsured motorist claim.

On November 16, 2017, the trial court denied Geico's motion to dismiss in part but granted the dismissal of Mr. and Mrs. Giles's common law bad faith claim. With regard to Geico's argument that Mr. and Mrs. Giles failed to comply with the provisions of Tennessee Code Annotated section 56-7-105, the trial court held that Geico made unsupported allegations of fact in its argument and whether Mr. and Mrs. Giles complied with this statute required an actual determination of facts.

As a result of the trial court's ruling, Geico filed a motion for interlocutory appeal which was denied by this Court. On October 5, 2020, Geico filed a motion for summary judgment arguing that Tennessee Code Annotated section 56-7-105 did not apply to automobile insurance policies. Mr. and Mrs. Giles filed a response to the motion for summary judgment, and Geico filed a reply. In December 2020, the trial court entered an order for Mr. and Mrs. Giles to revise their response to provide a concise statement of material facts that were genuinely in dispute. Thereafter, Mr. and Mrs. Giles filed their concise statement of additional material facts in support of their response, and Geico filed a response. On January 22, 2021, the trial court entered an order granting Geico's motion for summary judgment holding that Tennessee Code Annotated section 56-7-105 did not apply to automobile insurance policies. Specifically, the trial court found that:

> Tennessee Supreme Court cases have determined the legislature intended T.C.A. § 56-7-105 (previously T.C.A. § 56-1105) to only apply to classes of written contracts which bear interest from the time those contracts become due, i.e., life insurance, fire insurance, and not automobile insurance policies which do not become "due and payable" until judgment. *Tenn. Farmers Mutual v. Cherry*, 374 S.W.2d 371 (Tenn. 1964); *Medley v. Cimmaron Ins. Co.*, 514 S.W.2d 426 (Tenn. 1974).

On February 11, 2021, Mr. and Mrs. Giles timely filed their appeal.

## II.   ISSUES PRESENTED

Mr. and Mrs. Giles present the following issues for review on appeal, which we

- 4 -

have slightly restated:

1. Whether Tennessee Code Annotated section 56-7-105 applies to automobile insurance policies.
2. Whether Tennessee Code Annotated section 56-7-105, the bad-faith-failure-to-pay statute, applies to the facts of this case.
   a. Whether the policy of insurance in the instant case was due and payable;
   b. Whether a formal demand for payment was made by Mr. and Mrs. Giles;
   c. Whether Mr. and Mrs. Giles waited more than sixty (60) days after making the demand before filing suit;
   d. Whether the refusal to pay was not in good faith;
      i. Whether Geico failed to exercise ordinary care and diligence in investigating Mr. and Mrs. Giles's claim;
      ii. Whether Geico's offer of settlement in the amount of $25,000 on March 11, 2015 was made in bad faith because Geico knew that was not the available policy limits.

For the following reasons, we affirm the decision of the trial court.

### III. STANDARD OF REVIEW

On appeal, "[o]ur standard of review of a trial court's decision on a motion for summary judgment is de novo with no presumption of correctness." *Tatham v. Bridgestone Ams. Holding, Inc.*, 473 S.W.3d 734, 748 (Tenn. 2015) (citing *Parker v. Holiday Hosp. Franchising, Inc.*, 446 S.W.3d 341, 346 (Tenn. 2014)). "A trial court should grant summary judgment only when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (quoting Tenn. R. Civ. P. 56.04). In *Rye*, the Tennessee Supreme Court stated that:

> when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense.

*Rye v. Women's Care Ctr. of Memphis*, MPLLC, 477 S.W.3d 235, 264 (Tenn. 2015). "Once the moving party carries its burden under Rule 56, the nonmoving party 'may not rest upon mere allegations or denials of [its] pleading' but instead must respond and 'set forth specific facts' at the summary judgment stage 'showing that there is a genuine issue for trial.'" *Tatham*, 473 S.W.3d at 749 (quoting Tenn. R. Civ. P. 56.06).

## IV. DISCUSSION

On appeal, Mr. and Mrs. Giles present two main issues. The first issue is whether Tennessee Code Annotated section 56-7-105 applies to automobile insurance policies. Tennessee Code Annotated section 56-7-105(a), which has come to be known as the "bad-faith penalty statute," states that:

> (a) The insurance companies of this state, and foreign insurance companies and other persons or corporations doing an insurance or fidelity bonding business in this state, in all cases when a loss occurs and they refuse to pay the loss within sixty (60) days after a demand has been made by the holder of the policy or fidelity bond on which the loss occurred, shall be liable to pay the holder of the policy or fidelity bond, in addition to the loss and interest on the bond, a sum not exceeding twenty-five percent (25%) on the liability for the loss; provided, that it is made to appear to the court or jury trying the case that the refusal to pay the loss was not in good faith, and that the failure to pay inflicted additional expense, loss, or injury including attorney fees upon the holder of the policy or fidelity bond; and provided, further, that the additional liability, within the limit prescribed, shall, in the discretion of the court or jury trying the case, be measured by the additional expense, loss, and injury including attorney fees thus entailed.

Tenn. Code Ann. § 56-7-105(a).

We note that because "[t]his statute is penal in nature," it "must be strictly construed." *Minton v. Tenn. Farmers Ins. Co.*, 832 S.W.2d 35, 38 (Tenn. Ct. App. 1992). "When a statute is clear, we apply the plain meaning without complicating the task." *In re Estate of Tanner*, 295 S.W.3d 610, 614 (Tenn. 2009) (citing *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004)). Although the Sixth Circuit has found that Tennessee Code Annotated section 56-7-105 is "clear," *Heil Co. v. Evanston Ins. Co.*, 690 F.3d 722, 731 (6th Cir. 2012), we conclude that our caselaw discussing the statute is not. Given what may appear to be conflicting precedent on the applicability of this statute, we find it necessary to summarize the case law on this issue in order to properly address it. We begin this discussion by looking back to the foundation of this statute.

### A. History

In 1835, albeit before the invention of the automobile and automobile insurance, "[t]he legislature . . . enacted a statute, now [Tennessee Code Annotated section 47-14-109], wherein certain written obligations, classified therein, were to bear interest from the time they became due." *Tenn. Farmers Mut. Ins. Co. v. Cherry*, 374 S.W.2d 371, 372 (Tenn. 1964). With respect to interest in Tennessee, we have stated that:

- 6 -

Interest *as a matter of right* is purely statutory, unknown to the common law, and its positive allowance must be confined to those obligations and demands specified and enumerated in statutory provisions, and [in a] case not so included, it remains, as at common law, a matter of discretion in the jury or chancellor to be allowed or not, according to the facts presented.

*Fortner v. Frank Proctor & Wyatt-Johnson Buick, Pontiac, GMC Truck, Inc.*, No. 01-A-01-9002-CH00060, 1990 WL 125514, at *7 (Tenn. Ct. App. 1990) (emphasis added) (citing *S. Constr. Co. v. Halliburton*, 258 S.W. 409, 415 (Tenn. 1924)). Furthermore, we have explained that:

[A]n unliquidated loss on a policy does not bear interest as a matter of right. *Johnson v. Tennessee Valley Farmers Mutual Insurance Company*, 556 S.W.2d 750 (Tenn.1977). We note that "a claim is unliquidated when the amount of the damages cannot be computed except on conflicting evidence, inferences, and interpretations." 47 C.J.S. Interest, § 21. Since the amount of the loss in the instant case was disputed in the proof, the claim was of an unliquidated character and no interest attached as a matter of right.

*Ellis v. Ins. Co. of State of Pa.*, 1984 WL 560860, at *4 (Tenn. Ct. App. Mar. 27, 1984) (docket number unavailable on Westlaw).

At the beginning of the 20th Century, the Tennessee legislature enacted the bad faith penalty statute pursuant to chapter 141 of the Acts of 1901. *Cherry*, 374 S.W.2d at 371-72 (citing Tenn. Code Ann. § 56-1105). Chapter 141 of the Acts of 1901 became Tennessee Code Annotated section 56-1105, and is now Tennessee Code Annotated section 56-7-105. Acts 1901, ch. 141, § 1; Tenn. Code Ann. § 56-1105; Tenn. Code Ann. § 56-7-105. The statute's language read in part that the insurer "shall be liable to pay the holder of said policy, in addition to the loss *and interest thereon*, a sum not exceeding twenty-five per cent[.]" *Cherry*, 374 S.W.2d at 372 (quoting Tenn. Code Ann. § 56-1105).[5]

In *People's Bank & Tr. Co. v. U.S. Fid. & Guar. Co.*, the Tennessee Supreme Court first examined the question of the applicability of the provisions of chapter 141 of the Acts of 1901 to fidelity bonds.[6] *People's Bank & Tr. Co. v. U.S. Fid. & Guar. Co.*, 3 S.W.2d

---

[5] This statute has been construed by the Supreme Court of the United States, who explained that the statute "does not make the mere refusal to pay sufficient evidence of bad faith, so as to justify the added recovery; it requires that the bad faith be shown, and that the consequent additional loss be shown." *Supreme Ruling of the Fraternal Mystic Circle v. Snyder*, 227 U.S. 497, 504 (1913). Thus, "[t]he statute is aimed not at the rights secured by the contract, but at dishonest methods employed to defeat them." *Id.* at 503.

[6] In its opinion, the Tennessee Supreme Court noted that "[i]t [was] assumed in two opinions of this court that the provisions of the statute referred to applied to such contracts or to fidelity insurance as it is commonly called." *People's Bank*, 3 S.W.2d at 163 (citing *Kimball v. Parks*, 268 S.W. 117 (Tenn. 1925);

163, 163 (Tenn. 1928). The Tennessee Supreme Court explained that under "[c]hapter 141 of the Acts of 1901 . . . the several insurance companies of this state and foreign insurance companies and other corporations, firms, or persons doing an insurance business in this state, upon refusal to pay a loss occurring under a policy, within 60 days after demand[,]" were liable as follows:

> [They] shall be liable to pay the holder of said policy, in addition to the loss *and interest thereon*, a sum not exceeding twenty-five per cent. on the liability for said loss; provided, that it shall be made to appear to the court or jury trying the case that the refusal to pay said loss was not in good faith, and that such failure to pay inflicted additional expense, loss or injury upon the holder of said policy; and, provided, further, that such additional liability within the limit prescribed shall, in the discretion of the court or jury trying the case, be measured by the additional expense, loss and injury thus entailed.

*Id.* at 163-64 (quoting Acts 1901, ch. 141, § 1) (emphasis added). The Tennessee Supreme Court determined that life insurance policies, fire insurance policies, accident insurance policies, and certain other types of insurance contracts would come under this statute because they bear interest from the time they become due and payable. *Id.* at 164; *see Cherry*, 374 S.W.2d at 372. However, the Tennessee Supreme Court concluded that:

> Going back now to the provisions of chapter 141 of the Acts of 1901, it will be noticed that the language used is that the insurer "shall be liable to pay the holder of said policy, in addition to the loss *and interest thereon*, a sum not exceeding twenty-five per cent.," etc.

> Obviously, therefore, the Legislature had in mind a class of written contracts which bore interest. The penalty was imposed in addition to interest. The Legislature was not undertaking to deal with a class of contracts which did not bear interest. Keeping in mind the rule of strict construction referred to, chapter 141 of the Acts of 1901 being a penalty statute, we must conclude that said statute does not apply to the bond or contract upon which this suit is brought.

*Id.* The Tennessee Supreme Court's holding in *People's Bank* made clear that the statute did not apply to bonds or contracts which did not bear interest.[7] *Id.*

In 1964, in *Tenn. Farmers Mut. Ins. Co. v. Cherry*, the Tennessee Supreme Court was squarely presented with the question now before this Court: the applicability of

---

*Kendrick-Roan Grain & Elevator Co. v. Weaver*, 163 S.W. 814 (Tenn. 1913)).

[7] In *Cherry*, it was noted in its "analysis of the *People['s] Bank* case [that] . . . interest was not allowed under the common law." *Cherry*, 374 S.W.2d at 372 (italics added).

- 8 -

Tennessee Code Annotated section 56-1105 to automobile insurance policies. *Cherry*, 374 S.W.2d at 371. The court explained that in *People's Bank*, the court had noted that "certain insurance contracts, such as, life insurance, fire insurance and accident insurance would be covered by this penalty section, *since these types of insurance policies would bear interest from the time they became due*, regardless of whether a judgment was recovered on them or not." *Id.* at 372 (emphasis added). The Tennessee Supreme Court concluded that:

> The obligations on the part of the Insurance Company in the case at bar arises from a liability policy issued to their insured, wherein the Insurance Company agrees to pay, on behalf of the insured and within specified limits, all sums which the insured shall become legally obligated to pay as such damages because of personal injury or death of any person, or because of injury to, or destruction of property, caused by accident arising out of the ownership maintenance, or use of the vehicle insured. This type of insurance contract would not bear interest prior to any judgment secured thereon and then only upon the judgment; therefore [Tennessee Code Annotated section 56-1105] would not be applicable to such obligations.

> The allowance of any penalty on an insurance contract is solely a creature of statute which was brought into being by enactment of Chapter 141, Acts of 1901. Since the holding of this Court in *People['s] Bank & Trust Company v. United States Fidelity & Guaranty Company*, . . . insurance companies have operated in this State under the holding in this case. Such being the case we would have great reluctance in extending or overruling this holding without benefit of action of the legislature.

*Id.* at 372 (italics added). Later, in *Draper*, a case involving a garage liability insurance policy, the Tennessee Supreme Court followed the *Cherry* decision, concluding that interest was not allowable as of right and therefore the bad faith penalty statute was inapplicable. *Draper v. Great Am. Ins. Co.*, 458 S.W.2d 428, 433 (Tenn. 1970).

In *Burnette*, a federal district court also considered the applicability of Tennessee Code Annotated section 56-1105 to automobile insurance policies. *Burnette v. Grande Mut. Cas. Co.*, 311 F. Supp. 873, 875-76 (E.D. Tenn. 1970). The court explained that:

> In [*People's Bank*], the Court stated that the statute covers fire, accident and other insurance contracts which properly come under the section of the Tennessee Code which classifies written obligations in respect to the liability of the makers thereof for interest. The statute provides in part that the insured "shall be liable to pay the holder of said policy, in addition to the loss and interest thereon, a sum not exceeding 25%." The Tennessee appellate courts have construed the statute *as not to apply to contracts which do not bear interest before judgment*. [T]he insurance contract in question does not bear

interest.

*Id.* (emphasis added).  Additionally, the court explained that in *Cherry* "[i]t was noted that certain insurance contracts such as liability, fire and accident insurance bear interest and would be covered by the penalty section of [Tennessee Code Annotated section 56-1105], but that the policy there did not bear interest and was not covered by the penalty section of the statute." *Id.* at 876.

In *Manns*, this Court decided a case concerning the applicability of Tennessee Code Annotated section 56-1105 to automobile insurance policies.  *Manns v. Ind. Lumbermen's Mut. Ins. Co. of Indianapolis, Ind.*, 482 S.W.2d 557 (Tenn. Ct. App. 1971).  Following *People's Bank* and *Cherry*, we held that:

> [W]e find that the defendant was guilty of bad faith in resisting liability in this case.  However, on the authority of the old case of *People's Bank & Trust Co. v. U.S.F. & G. Co.* (1928), 156 Tenn. 517, 3 S.W.2d 163, reaffirmed by our Tennessee Supreme Court in the case of *Tennessee Farmers Ins. Co. v. Cherry* (1964), 213 Tenn. 391, 374 S.W.2d 371, we hold that [Tennessee Code Annotated section 56-1105] does not apply to automobile liability policies such as this one in this case.

*Id.* at 562 (italics added).

Despite the clarity in the various courts' decisions up to this point, some inconsistency began with the Tennessee Supreme Court's decision in *Crumley v. Travelers Indem. Co.*, 475 S.W.2d 654 (Tenn. 1972).  *Crumley* involved an automobile insurance policy that contained uninsured motorist protection.  The trial judge had awarded the plaintiff $5,000, "and, in addition, 25 per cent of that amount as a penalty for bad faith causing the plaintiff additional expense, as provided by T.C.A. s 56-1105." *Id.* at 658.  With respect to the penalty, our supreme court wrote:

> We are of opinion the trial judge entered the proper judgment in this case, except with respect to the twenty-five per cent statutory penalty awarded because, although the case does smack of neglect on Travelers' part, in failing to give its insured the attention he was entitled to under his policy, we do not think its conduct therein arises quite to the level of bad faith.  After all, it is necessary to draw the inferences from the facts which we have drawn before the implication of waiver can be adjudged to exist.  And we doubt if Travelers can be charged with bad faith in not drawing these inferences.

> The judgment of the Court of Appeals is set aside and the judgment of the trial court is affirmed, except with respect to the allowance of the statutory penalty of twenty-five per cent.

*Id.* at 659.  In its opinion, the Tennessee Supreme Court did not cite to *People's Bank* or *Cherry* or acknowledge its previous holdings that the penalty does not apply to automobile insurance policies in the first place. *Id.* at 654-659.

Two years later, however, in *Medley v. Cimmaron Ins. Co., Inc.*, the Tennessee Supreme Court reaffirmed its holding on the applicability of Tennessee Code Annotated section 56-1105 to automobile insurance policies. *Medley v. Cimmaron Ins. Co., Inc.*, 514 S.W.2d 426 (Tenn. 1974).  In that case, the Tennessee Supreme Court held that:

> [T]he chancellor was in error in holding that the automobile insurance policy in question is subject to the penalty provisions of [Tennessee Code Annotated section 56-1105].  It has been held in several cases in this state that a policy of automobile liability insurance is not subject to the terms and provisions of that statute.  *Tennessee Farmers Mutual Ins. Co. v. Cherry*, 213 Tenn. 391, 374 S.W.2d 371 (1964); *Manns v. Indiana Lumbermen's Mutual Ins. Co.*, 482 S.W.2d 557 (Tenn. App. W.S. 1971).

*Id.* at 428.  Thus, the Tennessee Supreme Court again found that Tennessee Code Annotated section 56-1105 was not applicable to automobile insurance policies. *Id.*

Yet in *Wilhite v. Tenn. Farmers Mut. Ins. Co.*, which was decided in the same year as *Medley*, the Tennessee Supreme Court considered another case involving issues related to the imposition of the penalty under Tennessee Code Annotated section 56-1105 to an automobile insurance policy without discussing whether the statute would apply in the first place.  *Wilhite v. Tenn. Farmers Mut. Ins. Co.*, 510 S.W.2d 885, 889 (Tenn. 1974).  In that case, the plaintiff sought to recover $10,000 of uninsured motorist coverage from her insurance company plus "a penalty of twenty-five per cent for the wilful and bad faith withholding of payment." *Id.* at 887.  The jury returned a verdict with a penalty of fifteen percent. *Id.*  The insurance company "assign[ed] as error the imposition by the jury and the court of the penalty of fifteen per cent allowed by [Tennessee Code Annotated section 56-1105]." *Id.* at 889.  The Tennessee Supreme Court agreed with the court of appeals stating "that there [was] material evidence to support the jury's finding that the penalty of fifteen per cent should be imposed." *Id.* at 889.  On the other hand, plaintiff contended that the penalty should be set at twenty-five percent. *Id.*  The Tennessee Supreme Court concluded that "[t]here is material evidence to support the jury's finding that the penalty should be imposed at fifteen per cent, but we cannot, by way of an additur, increase the award in the manner urged by the plaintiff." *Id.*  Like in *Crumley*, there is nothing in the opinion to suggest that the parties raised or the court considered the preliminary issue of whether the bad faith penalty statute would even apply to an automobile policy.

The Tennessee Supreme Court recognized "that an insurer is under the duty of dealing with its insured 'fairly and in good faith' in settling a claim by its insured under

the uninsured motorist provision of an automobile liability insurance contract." *MFA Mut. Ins. Co. v. Flint*, 574 S.W.2d 718, 721 (Tenn. 1978). Moreover, the Tennessee Supreme Court has said "[t]hat same duty is owed, of course, with respect to 'underinsured motorist' insurance." *Rutherford v. Tenn. Farmers Mut. Ins. Co.*, 608 S.W.2d 843, 846 (Tenn. 1980). Despite the Tennessee Supreme Court's discussion on good faith and bad faith in these two cases, it made no mention of its holding in *Cherry*.

In 1981, Tennessee Code Annotated section 56-1105 became section 56-7-105. *Compare* Tenn. Code Ann. § 56-1105 *with* Tenn. Code Ann. § 56-7-105. Although virtually identical, the Tennessee legislature notably added the language "fidelity bond[s]" and included "attorney fees" under the additional expense, loss, and injury. *Id.*

In *St. Paul Fire & Marine Ins. Co. v. Smith*, the Sixth Circuit followed *Cherry* and *Draper* in a case involving professional liability insurance. *St. Paul Fire & Marine Ins. Co. v. Smith*, 767 F.2d 921 (Table), 1985 WL 13383, *5 (6th Cir. June 26, 1985). The Sixth Circuit stated that "Tennessee authority clearly holds that [Tennessee Code Annotated section 56-7-105(a)] applies only 'to that class of written contracts, which written contracts themselves, [bear] interest from the time they [become] due.'" *Id.* (quoting *Cherry*, 374 S.W.2d at 372). The Sixth Circuit concluded:

> The Tennessee cases hold . . . that the type of interest referred in § 56-7-105(a) is that which accrues on an underlying contractual obligation rather than post-judgment interest. *See Cherry*, 374 S.W.2d at 372; *Draper v. Great American Insurance Co.*, 458 S.W.2d 428, 433 (Tenn. 1970). Indeed, the *Draper* case involved an insurance policy in which the insurer agreed to pay post-judgment interest under language identical to that found in Part III of the St. Paul insurance policy. Despite such language, the Tennessee Supreme Court held § 56-7-105(a) inapplicable. We hold that the *Cherry* and *Draper* cases are controlling and that the damage award under § 56-7-105(a) cannot stand.

*Id.* (case names italicized rather than underlined). Therefore, the Sixth Circuit reversed the award of damages under Tennessee Code Annotated section 56-7-105(a). *Id.*

In *Hurst Co., Inc. v. Bituminous Ins. Cos.*, we recognized that it appeared from prior case law that the statutory penalty in Tennessee Code Annotated section 56-7-105 was not applicable to contracts of liability insurance. *Hurst Co., Inc. v. Bituminous Ins. Cos.*, No. 03A01-9707-CH-00304, 1998 WL 283069, at *2 n.3 (Tenn. Ct. App. May 28, 1998). However, the defendant-appellee in that case raised no objection to the imposition of the bad faith penalty on appeal. *Id.*

After a series of *Gaston v. Tenn. Farmers Mut. Ins. Co.* opinions, some uncertainty arose as to whether Tennessee Code Annotated section 56-7-105 applied to automobile

insurance policies.  *Gaston v. Tenn. Farmers Mut. Ins. Co.*, No. E2006-01103-COA-R3-CV, 2007 WL 1775967 (Tenn. Ct. App. 2007); *Gaston v. Tenn. Farmers Mut. Ins. Co.*, 120 S.W.3d 815 (Tenn. 2003), *reh'g denied* (Jan. 5, 2004), *aff'g Gaston v. Tenn. Mut. Ins. Co.*, No. E2001-01487-COA-R3-CV, 2002 WL 31414096 (Tenn. Ct. App. Oct. 28, 2002). The case involved an insurance company's refusal to pay its policyholder under the uninsured motorist provision of her policy.  *Gaston*, 120 S.W.3d at 817.  The Tennessee Supreme Court concluded that "the evidence was sufficient for a reasonable jury to find that Tennessee Farmers waived its policy provision requiring written consent before its policyholder could settle with a third party," and therefore, the trial court erred in granting a directed verdict.  *Id.* at 820.  Likewise, the Court found that "a jury could reasonably conclude that Tennessee Farmers' conduct was unfair or deceptive under the TCPA," and so "the trial court erred in granting a directed verdict on this issue."  *Id.* at 822.  Finally, the Court briefly discussed the bad faith statute as follows:

> The language of [Tennessee Code Annotated section 56-7-105] expressly applies to insurance companies and provides that a jury decide whether the evidence demonstrates bad faith on the part of the insurer.  We believe that a reasonable jury could conclude that [the insurance company's] conduct in this case constituted bad faith in connection with its refusal to pay Gaston's claim.

*Id.*  The Tennessee Supreme Court concluded that the trial court improperly directed a verdict on the insured's claim under the bad faith statute.  *Id.* at 823. Therefore, the Tennessee Supreme Court remanded to the trial court for a new trial.  *Id.*

On *Gaston*'s appeal to this Court after the new trial, we considered "whether the evidence preponderates against the trial court's finding that [the insurance company] was not guilty of bad faith."  *Gaston*, 2007 WL 1775967, at *13.  We explained that:

> Before a plaintiff may recover a penalty pursuant to this provision, "(1) the policy of insurance must, by its terms, have become due and payable, (2) a formal demand for payment must have been made, (3) the insured must have waited 60 days after making his demand before filing suit (unless there was a refusal to pay prior to the expiration of the 60 days), and (4) the refusal to pay must not have been in good faith."  *Palmer v. Nationwide Mut. Fire Ins. Co.*, 723 S.W.2d 124, 126 (Tenn. Ct. App. 1986); *Walker v. Tenn. Farmers Mut. Ins. Co.*, 568 S.W.2d 103, 106 (Tenn. Ct. App. 1977).  The plaintiff has the burden of proving the insurer's bad faith.  *Palmer*, 723 S.W.2d at 126. Whether an insurer acted in good faith is generally a fact question for the trier of fact.  *Mason v. Tenn. Farmers Mut. Ins. Co.*, 640 S.W.2d 561, 567 (Tenn. Ct. App. 1982).

*Id.* at *13.  Without discussing *Cherry* and its progeny, this Court found no abuse of

- 13 -

discretion on behalf of the trial court in its finding as to whether the insurer acted in good faith. *Id.* at \*14; *see* Tenn. Code Ann. § 56-7-105(a). In fact, *Cherry* was not mentioned in any of the three *Gaston* opinions on appeal. *Id.* at \*1-17; *Gaston*, 120 S.W.3d at 817-23; *Gaston*, 2002 WL 31414096, at \*1-6.

In *Leverette v. Tenn. Farmers Mut. Co.*, No. M2011-00264-COA-R3-CV, 2013 WL 817230, at \*16-17 (Tenn. Ct. App. Mar. 4, 2013), which involved an automobile insurance policy, the plaintiffs asserted a claim for bad faith but their complaint characterized it as a common law "tort of bad faith" rather than invoking the statutory bad faith penalty statute. Citing *Gaston,* this Court suggested that the statutory penalty would have been applicable if it had been plead by the plaintiffs. *Id.* However, we vacated the holding of liability for bad faith "since the statutory cause of action was not plead." *Id.* at \*1.

Recently in *For Senior Help*, the federal district court for the Middle District of Tennessee summarized the current state of the case law on this issue. The court noted that the plaintiff had asserted a claim for the statutory bad faith penalty. However, the court added:

> The plaintiff now concedes that the Tennessee courts have unambiguously held that § 56-7-105(a) "applies only 'to that class of written contracts, which written contracts themselves, [bear] interest from the time they [become] due.'" *St. Paul Fire & Marine Ins. Co. v. Smith*, 767 F.2d 921 (Table), 1985 WL 13383, at \*5 (6th Cir. June 26, 1985) (quoting *Tenn. Farmers Mut. Ins. Co. v. Cherry*, 213 Tenn. 391, 374 S.W.2d 371, 372 (1964)). That is, as explained in *Cherry*, it applies to "life insurance, fire insurance and accident insurance" policies, "since these types of insurance policies would bear interest from the time they became due, regardless of whether a judgment was recovered on them or not." *Cherry*, 374 S.W.2d at 372. It does not apply to liability insurance policies pursuant to which an insurance company "agrees to pay, on behalf of the insured and within specified limits, all sums which the insured shall become legally obligated to pay as such damages" to a third party. *Id*.; *see also Draper v. Great Am. Ins. Co.*, 224 Tenn. 552, 458 S.W.2d 428, 433 (1970); *Hurst Co. v. Bituminous Ins. Cos.*, No. 03A01-9707-CH-00304, 1998 WL 283069, at \*1 (Tenn. Ct. App. May 28, 1998). The plaintiff acknowledges that these cases, the most recent of which is more than twenty years old, have never been overruled.

*For Senior Help, LLC v. Westchester Fire Ins. Co.*, 515 F. Supp. 3d 787, 800 (M.D. Tenn. 2021). The court also added a footnote regarding the impact of *Gaston* on these cases:

> While the referenced cases [*Cherry*, *Draper*, *Hurst*, and *St. Paul*] have not expressly been overruled, in 2003 the Tennessee Supreme Court reversed a trial court's issuance of a directed verdict in favor of an insurance company

that provided liability insurance, in a case involving coverage for injuries sustained in an automobile accident. *Gaston v. Tenn. Farmers Mut. Ins. Co.*, 120 S.W.3d 815 (Tenn. 2003). The plaintiff in that case brought a claim for bad faith denial of coverage, expressly invoking Tenn. Code Ann. § 56-7-105. Without referencing any of the above-cited cases, the Tennessee Supreme Court stated: "The language of this statute expressly applies to insurance companies and provides that a jury decide whether the evidence demonstrates bad faith on the part of the insurer. We believe that a reasonable jury could conclude that [the insurer's] conduct in this case constituted bad faith in connection with its refusal to pay [the plaintiff's] claim." *Gaston*, 120 S.W.3d at 822. The court did not state that it was overruling *Cherry*, and it is unclear from the record whether the insurance company brought *Cherry* or the line of cases on which it relied to the court's attention. The Tennessee Supreme Court typically exercises its power to overrule former decisions "sparingly . . . and only when the reason is compelling." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 262 (Tenn. 2015). It generally does so only with great deliberation. *See, e.g., id.* This court, accordingly, cannot conclude that *Gaston* overruled *Cherry* simply by implication, though the more recent opinion certainly calls into question the continuing validity of *Cherry*.

*For Senior Help, LLC*, 515 F. Supp. 3d at 800 n.7.

## B. Applicability of T.C.A. § 56-7-105 to Automobile Insurance Policies

Considering those cases, we return to the first issue in the case at bar: whether Tennessee Code Annotated section 56-7-105 applies to automobile insurance policies. Following a jury verdict for Mr. and Mrs. Giles and against Ms. Harris, Geico paid the sum of $75,000, the applicable underinsured coverage limits, into the Marion County Circuit Court. Afterwards, Mr. and Mrs. Giles filed a lawsuit in the Marion County Circuit Court seeking additional damages, pursuant to Tennessee Code Annotated section 56-7-105, for a bad faith claim against Geico as the uninsured/underinsured motorist carrier in the underlying suit. On January 22, 2021, the trial court entered an order granting Geico's motion for summary judgment concluding that Tennessee Code Annotated section 56-7-105 did not apply to automobile insurance policies. Specifically, the trial court found that:

Tennessee Supreme Court cases have determined the legislature intended T.C.A. § 56-7-105 (previously T.C.A. § 56-1105) to only apply to classes of written contracts which bear interest from the time those contracts become due, i.e., life insurance, fire insurance, and not automobile insurance policies which do not become "due and payable" until judgment. *Tenn. Farmers Mutual v. Cherry*, 374 S.W.2d 371 (Tenn. 1964); *Medley v. Cimmaron Ins. Co.,* 514 S.W.2d 426 (Tenn. 1974).

- 15 -

Likewise, as stated by the court in *For Senior Help*, we cannot conclude that *Gaston* overruled *Cherry* and its progeny.

The courts of this state have been presented with situations regarding arguably conflicting precedent before. In *Clinton Books, Inc. v. City of Memphis*, 197 S.W.3d 749, 752 (Tenn. 2006), our supreme court explained that "[t]he long-standing rule in Tennessee is that state courts of equity lack jurisdiction to enjoin the enforcement of a criminal statute that is alleged to be unconstitutional." *Id.* (citing *Alexander v. Elkins*, 132 Tenn. 663, 179 S.W. 310, 311 (1915); *J.W. Kelly & Co. v. Conner*, 122 Tenn. 339, 123 S.W. 622, 637 (1909)). The supreme court then rejected the suggestion that two of its more recent cases had altered this longstanding rule:

> Contrary to the plaintiffs' contentions, this Court's recent decisions in *Planned Parenthood of Middle Tenn. v. Sundquist*, 38 S.W.3d 1 (Tenn. 2000), and *Davis-Kidd Booksellers, Inc. v. McWherter*, 866 S.W.2d 520 (Tenn.1993), have not altered this rule. The plaintiffs in these cases sought injunctive and declaratory relief challenging the constitutionality of statutes that provided for the imposition of criminal penalties if violated. In both cases, this Court addressed the constitutionality of the statutes **without addressing** the trial court's jurisdiction to grant injunctive relief. *Planned Parenthood*, 38 S.W.3d at 7-25; *Davis-Kidd Booksellers, Inc.*, 866 S.W.2d at 523-33. We have recognized that "'stare decisis only applies with reference to decisions directly upon the point in controversy.'" *Staggs v. Herff Motor Co.*, 216 Tenn. 113, 390 S.W.2d 245, 248 (1965) (quoting *State ex rel. Pitts v. Nashville Baseball Club*, 127 Tenn. 292, 154 S.W. 1151, 1155 (1912)). Accordingly, **the omission of any discussion** of the trial court's jurisdiction in *Planned Parenthood* and *Davis-Kidd* **should not be interpreted as altering the general rule** prohibiting state equity courts from enjoining enforcement of a criminal statute.

*Id.* at 752-53 (bold emphasis added).

We used the same approach in *Memphis Bonding Co., Inc. v. Crim. Ct. of Tenn. 30th Dist.*, 490 S.W.3d 458, 466 (Tenn. Ct. App. 2015). We explained that the Tennessee Supreme Court had directly answered a particular question in a case from 1965. *Id.* (citing *Zirkle v. City of Kingston*, 217 Tenn. 210, 396 S.W.2d 356, 363 (1965)). Even though "the supreme court had not explicitly overruled *Zirkle*," another panel of the Court of Appeals had concluded that the supreme court "clearly departed from the unequivocal declaration in *Zirkle* in two subsequent cases: *Davis-Kidd Booksellers, Inc. v. McWherter*, 866 S.W.2d 520 (Tenn.1993) and *Clinton Books*, 197 S.W.3d at 749." *Id.* However, "neither *Davis-Kidd* nor *Clinton Books* contain[ed] any discussion regarding" the particular matter at issue. *Id.* As such, the *Memphis Bonding* court disagreed with the other panel's reasoning that

- 16 -

the supreme court "clearly departed from the unequivocal declaration in *Zirkle* by its silence in *Davis-Kidd* and *Clinton Books*." *Id.* at 467. Instead, we found that "the supreme court's unequivocal statements in *Zirkle* and [an older case] [were still] controlling." *Id.*

Similarly, we conclude that *Gaston* should not be interpreted as altering the unequivocal declaration from *Cherry* that automobile insurance policies are not subject to Tennessee Code Annotated section 56-7-105. We should not assume that automobile insurance policies are subject to Tennessee Code Annotated section 56-7-105 based on the fact that the issue was not addressed in *Gaston*.[8] As stated in *Cherry*, "[t]his type of insurance contract would not bear interest prior to any judgment secured thereon and then only upon the judgment; therefore [Tennessee Code Annotated section 56-7-105] would not be applicable to such obligations." *Cherry*, 374 S.W.2d at 372. We find the Tennessee Supreme Court's unequivocal statement in *Cherry* to be controlling. *See also Medley,* 514 S.W.2d at 428 ("It has been held in several cases in this state that a policy of automobile liability insurance is not subject to the terms and provisions of [the bad faith penalty] statute.").

Because we are bound by the holding in *Cherry*, we find that Tennessee Code Annotated section 56-7-105 is inapplicable to the automobile insurance policy in our case. The trial court's order granting Geico's motion for summary judgment is affirmed. Furthermore, because we find that Tennessee Code Annotated section 56-7-105 does not apply to automobile insurance policies, the second issue of whether Tennessee Code Annotated section 56-7-105 applies to the facts of this case is pretermitted.

## V. CONCLUSION

For the aforementioned reasons, we affirm the decision of the trial court. Costs of this appeal are taxed to the appellants, Shannon Giles and Thomas Giles, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE

---

[8] Although Mr. and Mrs. Giles argue that the cases *Cherry*, *Hurst*, and *Medley* "clearly derogate[]" from cases like *Wilhite*, *Flint*, and *Gaston*, "we are bound to follow [Tennessee Supreme Court decisions] if they are on point." *In re Estate of McRedmond*, No. M2013-02582-COA-R3-CV, 2014 WL 6324283, *16 n.14 (Tenn. Ct. App. Nov. 14, 2014) (quoting *Publix Super Markets, Inc. v. Tenn. Dep't of Labor & Workforce Dev.*, 402 S.W.3d 218, 230 (Tenn. Ct. App. 2012)). *Cherry* is on point and controls our decision, and we cannot assume that *Gaston* overruled *Cherry* by implication.